# EXHIBIT
# #39

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

           Debtor,    :       **ORIGINAL**

BAYONNE MEDICAL CENTER,    :
Debtor and
Debtor-in-Possession; and    :
ALLEN D. WILEN, in his       DEPOSITION OF:
capacity as Liquidating
Trustee and Estate       ROBERT H. EVANS
Representative for the Estate    :
of Debtor, Bayonne Medical       VOLUME I
Center,    :    (Pages 1-236)

        Plaintiff,    :

      -vs-    :

BAYONNE/OMNI DEVELOPMENT,    :
L.L.C., a New Jersey limited
liability company; et al.,    :

      Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - -

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1   spanned over or the amount that would be repaid,

2   whether it be a big amount and then amortized in

3   smaller amounts or when it would start, as a matter

4   of fact.  I did have a general idea that it would

5   start when the building was operational, the SNF

6   building was operational.

7          Q.      So if I'm understanding you

8   correctly, before October 14, '05 it did not come to

9   your attention that the pledge that was sought would

10   be payable over five years?

11          A.      It did not.

12             MR. FALANGA:  Object to the form.

13          Q.      And it did not come to your attention

14   before October 14, 2005 that the pledge that would

15   be sought would have its first installment due

16   specifically in July of 2008?

17             MS. KIERKUT:  Object to the form.

18             MR. FALANGA:  Object to the form.

19          Q.      You can answer it.

20          A.      Could you repeat it, please?

21          Q.      Is it true that it did not come to

22   your attention before October 14, '05 that the

23   pledge would that would be sought would have its

24   first installment due specifically in July of 2008?

25             MS. KIERKUT:  Object to the form.

# EXHIBIT
# #40

| | |
|---|---|
| From: | Donald Ross [DRoss@lindabury.com] |
| Sent: | Thursday, June 15, 2006 10:04 AM |
| To: | Mohrle, Paul |
| Subject: | FW: Offer LetterBayonne Medical Center to Avery Eisenreich  606_v1.DOC |
| Attachments: | Offer LetterBayonne Medical Center to Avery Eisenreich  606_v1.DOC |

Paul—as discussed.

---

**From:** Robert S. Burney
**Sent:** Wednesday, June 14, 2006 1:44 PM
**To:** 'Evans, Carrie'; Donald Ross
**Subject:** Offer LetterBayonne Medical Center to Avery Eisenreich 606_v1.DOC

<<Offer LetterBayonne Medical Center to Avery Eisenreich 606_v1.DOC>>

**Carrie and D.B.:**

**I have attached a draft of an offer letter to Fred Gruen.  Please note that there are a number of points which must be clarified before the letter can be finalized.  These points are bracketed and in bold face.  I would be happy to discuss the letter with you at any time.**

**Rob**

Robert S. Burney, Esq.

Lindabury, McCormick & Estabrook, P.A.

53 Cardinal Drive

P.O. Box 2369

Westfield, NJ 07091-2369

Phone:  (908) 233-6800 ext. 356

Fax:  (908) 233-5078

Email:  rburney@lindabury.com

BMC048701

**Robert S. Burney**
908-301-5613
rburney@lindabury.com

June ____, 2006

SENT BY FACSIMILE TO (908) 6875391 AND BY REGULAR MAIL

Fred R. Gruen, Esq.
Gruen & Goldstein
1945 Morris Avenue
P.O. Box 2266
Union, NJ 07083

Re:   **Bayonne Medical Center to Avery Eisenreich**
P.Q.:   **The "Bell Building"**
**636-644 Broadway   (Block 164 Lots 1-5)**
**City of Bayonne, Hudson County, New Jersey**

Dear Mr. Gruen:

This firm is legal counsel to Bayonne Medical Center ("BMC"). This letter sets forth the terms and conditions pursuant to which BMC would agree to sell the property referenced above (the "Subject Property") to Avery Eisenreich or a related real estate entity.

1.     Property. The Subject Property is commonly known as the "Bell Building," and is located at 636-644 Broadway (a/k/a Block 164 Lots 1, 2, 3, 4, and 5) in the City of Bayonne, Hudson County, New Jersey, consisting of ____ acres of real property and a _____ square foot industrial building (the "Building"), along with all the other buildings, appurtenances, and improvements located thereon.

2.     Purchaser. Avery Eisenreich or a legal entity in which Mr. Eisenreich or members of his immediate family own a controlling interest ("Purchaser").

3.     Purchase Price. The purchase price (the "Purchase Price") will be _____ ($_____), payable as follows:

3.1.     First Deposit. An initial deposit (the "First Deposit") of $_____ will be delivered to the Escrow Agent (as hereinafter defined) upon the execution of the definitive Agreement for Purchase and Sale of Real Estate (the "P&S Agreement").

LMEDOCS 373867v1

BMC048702

Fred R. Gruen, Esq.
June ___, 2006
Page 2

      3.2.   Second Deposit.  A second deposit (the "Second Deposit" and, together with the First Deposit, collectively the "Deposit") of $_____ shall be delivered to Escrow Agent within three (3) days following the expiration of the Due Diligence Period (defined hereinafter).

      The Deposit shall be applied against the Purchase Price at the Closing (defined hereinafter) and shall be refundable to Purchaser until the expiration of the Due Diligence Period (as hereinafter defined).

      3.3.   Balance of Purchase Price.  The balance of the Purchase Price shall be payable at the Closing by federal funds wire transfer.

      4.   Escrow Agent.  The Deposit will be held by Lindabury, McCormick & Estabrook, P.A., in an interest-bearing attorney trust account.

      5.   Due Diligence Period.  Purchaser shall have up to _____ (__) days from the effective date of the Purchase Agreement to perform its due diligence on the Subject Property ("Purchaser's Due Diligence Period").  If, at any time prior to the expiration of Purchaser's Due Diligence Period, Purchaser shall determine, in its sole and absolute discretion, that it does not wish to proceed wit the acquisition of the Subject Property, then Purchaser may terminate the Purchase Agreement by providing written notice to Seller of such determination. Thereafter, neither Purchaser nor Seller shall have any further obligations to the other pursuant to the terms of the Purchase Agreement, except as expressly set forth in the Purchase Agreement, and the Deposit shall be returned to Purchaser.  Purchaser agrees to use its reasonable best efforts to complete its due diligence investigation as quickly as possible.

      6.   Purchase Agreement.  This letter is intended to convey the significant business terms and conditions pursuant to which Purchaser would agree to purchase the Subject Property; and it is not intended to constitute a legally enforceable contract.  The respective rights and duties of the parties are subject to, and contingent upon, their execution of a definitive Agreement for Purchase and Sale of Real Estate ("P&S Agreement"), which shall contain such terms, conditions, covenants, representations, and warranties as are customary or appropriate to transactions of this nature. **[Purchaser's/Seller's]** counsel will prepare the initial draft of the Purchase Agreement.

      7.   Limitation on Use of Subject Property.  The Deed shall include a restriction on the use of the Subject Property:  so long as Seller, its successors and assigns shall own or operate a general acute care hospital within the City of Bayonne, the Subject Property shall be used exclusively as a **[nursing home; skilled nursing home; intermediate care facility; convalescent home; rehabilitation center; assisted living facility, residence or program; residential healthcare facility or comprehensive personal care home.]** licensed by the New Jersey Department of Health and Senior Services (or its successor).

                      LMEDOCS 373867v1



Fred R. Gruen, Esq.
June ___, 2006
Page 3

8. _Lease of Space to Seller._ Simultaneously with the Closing, Seller and Purchaser shall execute and deliver a Lease Agreement (the "Lease") pursuant to which Purchaser shall lease to Seller 40,000 square feet of space located on the _____ floors of the Building (the "Leased Premises") for use as _____. The term of the Lease shall be _____ years **[any renewal options?]**. During the term of the Lease, Seller, as tenant, shall pay Purchaser, as owner, rent based upon $35.00 per **[rentable/usable]** square foot of leased space. **[Is this a gross rent or a net rent? If net, what additional rent must be paid? How long is this rent in effect? How does it change?]**

9. _Build-Out of Leased Premises._ Seller, as tenant, shall be responsible for constructing tenant improvements in the Lease Premises, at its own cost and expense. Purchaser's obligation, as landlord, shall be limited to construction of the "framework" **[should this be clarified?]**

10. _Assignment of Long Term Acute Care Beds._ Simultaneously with the closing of the sale of the Subject Property, BMC will transfer to _____ ("Transferee") its license to operate nine (9) long term acute care beds. The parties acknowledge that such transfer is subject to the approval of the New Jersey State Department of Health and Senior Services.

11. _Closure of Sub-Acute Services._ On or about the date of the Closing, BMC will close its _____ sub-acute beds.

12. _Personal Property._ **[other than the LTAC beds, will any personal property be transferred with the building?]**

13. _Condition of Subject Property._ The Subject Property is being sold in its "as-is," "where-is" condition, "with all faults;" and Seller will make no representations or warranties concerning the condition of the Subject Property, it being the intent of the parties that Purchaser will perform all desired due diligence investigations during Purchaser's Due Diligence Period.

14. _Environmental Matters._ Purchaser shall be responsible for completing, at its own cost and expense, any legally-required remediation of the environmental condition of the Subject Property. Seller shall comply, at its cost and expense, with the requirements of ISRA. **[what was the property used for?]**

15. _Closing._ The closing of the sale of the Subject Property (the "Closing") shall take place on a date mutually acceptable to the parties which shall be not more than _____ (___) days following the expiration of Purchaser's Due Diligence Period.

16. _Brokerage._ In the P&S Agreement, each party shall represent to the other that it has not dealt with any real estate agent or broker in connection with this transaction. The P&S Agreement shall include a standard mutual indemnification provision.

LMEDOCS 373867v1

Fred R. Gruen, Esq.
June ___, 2006
Page 4


     This letter is intended to communicate some of the proposed terms of the sale.  It is <u>not</u> intended to be, and should not be construed as, a legally-enforceable contract for the sale of the Subject Property.  The terms of BMC's offer are subject to change or revocation.  BMC's obligation to sell the Subject Property is subject to the negotiation, execution, and delivery of the definitive P&S Agreement.

     Thanks to your and your client for your consideration of this proposal.  We look forward to working with you to consummate this transaction successfully.

                      Very truly yours,

                      LINDABURY, McCORMICK & ESTABROOK


                      Robert S. Burney

RSB:tbm

LMEDOCS 373867v1


BMC048705

# EXHIBIT
# #41

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,      :

               Debtor,             :          **ORIGINAL**

BAYONNE MEDICAL CENTER,            :
Debtor and
Debtor-in-Possession; and          :
ALLEN D. WILEN, in his                 DEPOSITION OF:
capacity as Liquidating            :
Trustee and Estate                     ROBERT H. EVANS
Representative for the Estate      :
of Debtor, Bayonne Medical             VOLUME I
Center,                            :   (Pages 1-236)

               Plaintiff,          :

               -vs-                :

BAYONNE/OMNI DEVELOPMENT,          :
L.L.C., a New Jersey limited
liability company; et al.,         :

               Defendants.         :
- - - - - - - - - - - - - - - - - - - -

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services.
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1   created and it has the different name on it.

2          Q.     In 2005, as you understood it, did

3   BMC have a policy with respect to enforceability of

4   pledges?

5                 MS. KIERKUT:  Object to the form.

6                 MR. FALANGA:  Object to the form.

7          A.     As I understood it, we did not have a

8   policy, per se, to the collectability of pledges,

9   per se, but we, "we," the senior management team, as

10  well as the board, did have a working knowledge that

11  served as our policy.

12         Q.     And what was the working knowledge?

13         A.     The working knowledge was that we,

14  Bayonne Medical Center, would treat pledges not as

15  debts, and we would seek to build relationships with

16  the people who pledge to us.  And that if at the end

17  of the day we were not able to collect the pledge,

18  you know, we would either try and find a way to

19  perhaps work with the donor or develop some other

20  mechanism, but we did not view them as debts.

21  That's it.

22         Q.     Were you involved in any way in the

23  vascular campaign?

24         A.     I was.

25         Q.     And the vascular campaign was a

# EXHIBIT
# #42

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,          :

           Debtor,          :          **ORIGINAL**

BAYONNE MEDICAL CENTER,          :
Debtor and
Debtor-in-Possession; and          :
ALLEN D. WILEN, in his          DEPOSITION OF:
capacity as Liquidating          :
Trustee and Estate          ROBERT H. EVANS
Representative for the Estate          :
of Debtor, Bayonne Medical          VOLUME I
Center,          :          (Pages 1-236)

           Plaintiff,          :

          -vs-          :

BAYONNE/OMNI DEVELOPMENT,          :
L.L.C., a New Jersey limited
liability company; et al.,          :

         Defendants.          :
-----------------------------------

B E F O R E :

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

Page 78

1    fundraising campaign?

2         A.    It was.

3         Q.    And did BMC take counsel from Rotolo,

4    I hope I have that name correct, in connection with

5    the vascular campaign?

6              MR. FALANGA:  Object to the form.

7         A.    Rotolo Associates, yes, that's the

8    name.

9         Q.    Was what you referred to as the

10   working knowledge of the group that stood in as

11   policy with respect to enforceability of pledges

12   something that was addressed by Rotolo to BMC?

13             MS. KIERKUT:  Object to the form.

14             MR. FALANGA:  Objection.

15        Q.    You can answer the question.

16        A.    Rotolo Associates when they came in,

17   they actually worked with a number of senior

18   management people, including myself, and even had a

19   slide presentation.  In those conversations and

20   somewhere in that slide presentation, they talked

21   about, and I'm paraphrasing, but when you received

22   objections from a donor, particularly the larger the

23   amount, presumably the bigger the objection, that

24   you were to put them at ease, let them understand

25   that this is a relationship and allay their fears,

DEPOLINK COURT REPORTING & LITIGATION SERVICES (973) 353-9880

1    but it's not a debt, it's not an obligation.

2    However, you do want to get them to pledge, because

3    pledges will turn into dollars.  And that's how we

4    were told to look at it from Rotolo Associates.

5         And even further, we had a number of events

6    where we did fundraisers, and senior management and

7    the board, one in particular I remember, I don't

8    remember the exact date, but it was held at the

9    Chandelier Restaurant on Avenue E in Bayonne one

10   evening, it started at 7:00.  And the chairman of

11   that campaign was there, as well as someone from

12   Rotolo Associates, Vinny Lombardo, most of our board

13   of trustees, most of our senior management.  We had

14   a light dinner, we had a presentation by Dr. Peter

15   Smith about the vascular center.  And then

16   afterwards we were basically told to sign up as many

17   people as we could.  We were trying to get 100

18   people at $10,000 each, that was the campaign man's

19   idea.  And we were told specifically that night,

20   overcome anybody's obstacles, tell them it's not a

21   debt, it's good faith, it's their commitment to

22   Bayonne Medical Center, we'll work with them, and

23   that's what we did.

24        Q.    Did the Peter Smith presentation

25   and/or the Rotolo presentation inform what stood in

# EXHIBIT
# #43

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,          :

                Debtor,                :      **ORIGINAL**

BAYONNE MEDICAL CENTER,                :
Debtor and
Debtor-in-Possession; and              :
ALLEN D. WILEN, in his                        DEPOSITION OF:
capacity as Liquidating                :
Trustee and Estate                            ROBERT H. EVANS
Representative for the Estate           :
of Debtor, Bayonne Medical                      VOLUME I
Center,                                 :     (Pages 1-236)

                Plaintiff,             :

                -vs-                   :

BAYONNE/OMNI DEVELOPMENT,              :
L.L.C., a New Jersey limited
liability company; et al.,            :

                Defendants.            :
- - - - - - - - - - - - - - - - - - - -

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

                DepoLink
     Court Reporting & Litigation Support Services
        Phone (973) 353-9880    Fax (973) 353-9445
                www.depolinklegal.com

1       A.      I pledge to do this for you.  It's

2   not something that certainly I would have understood

3   to be a legal contract that had been subsequently

4   altered.  If it had, then yes, I would have felt --

5   I would have had an obligation and I certainly would

6   have exercised that, as would Heather Aaron or Paul

7   Mohrle, but that's not how we viewed the pledge.

8       Q.      What's not how you viewed the pledge?

9           MR. GRUEN:  Objection.

10      A.      We did not view the pledge as a legal

11  contract.

12      Q.      And my question is that you felt then

13  it was not your duty to communicate that to --

14      A.      I never even thought of it.

15          MR. FALANGA:  Objection.

16      Q.      Did you have any conversations with

17  Heather Aaron or Paul Mohrle or Carrie Evans at any

18  time before the management rep letter of April 2006

19  about whether you should or shouldn't report to

20  Withum the existence of the comfort letter?

21          MS. KIERKUT:  Object to the form.

22      A.      The comfort letter became a much

23  bigger deal in the litigation than it ever was in

24  its original life.  So no, I had no conversations.

25      Q.      Did you ever have any conversation

# EXHIBIT
# #44

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,          :

                    Debtor,            :          **ORIGINAL**

BAYONNE MEDICAL CENTER,                :
Debtor and
Debtor-in-Possession; and             :
ALLEN D. WILEN, in his                      DEPOSITION OF:
capacity as Liquidating                :
Trustee and Estate                          ROBERT H. EVANS
Representative for the Estate          :
of Debtor, Bayonne Medical                      VOLUME I
Center,                                :     (Pages 1-236)

                    Plaintiff,         :

                    -vs-               :

BAYONNE/OMNI DEVELOPMENT,              :
L.L.C., a New Jersey limited
liability company; et al.,             :

                    Defendants.        :
- - - - - - - - - - - - - - - - - - - -

B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1        A.        Yes, Vince Lombardo.

2        Q.        Did you ever have any conversations

3    with any of those people that I just mentioned about

4    what you've referred to as what stood in for policy

5    of BMC with respect to enforceability of pledges?

6                  MS. KIERKUT:   Objection to form.

7                  MR. FALANGA:   Object to the form.

8        Q.        You can answer the question.

9        A.        I did have a conversation

10   specifically on enforceability with the director of

11   our foundation, or the executive director of our

12   foundation, Vinny Lombardo.

13       Q.        And what was that conversation?

14       A.        Well, I remember the conversation

15   took place actually in the cafeteria of the old

16   Bayonne Medical Center.   Vinny was having lunch with

17   Marv Apsel and Gene Greenan, who was the compliance

18   officer, and I asked him if I could talk to him for

19   a minute.   And I explained to him that I wanted to

20   know from his perspective or from the foundation's

21   perspective what is our policy on pledges.   If

22   somebody can't pay a pledge or doesn't pay a pledge,

23   what do we do.   And he laughed and he said, "We

24   don't do anything."   And, you know, I think it was a

25   somewhat sarcastic comment.   I think he was trying

# EXHIBIT
# #45

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,          :

                    Debtor,            :        **ORIGINAL**

BAYONNE MEDICAL CENTER,                :
Debtor and
Debtor-in-Possession; and             :
ALLEN D. WILEN, in his                      DEPOSITION OF:
capacity as Liquidating                :
Trustee and Estate                          ROBERT H. EVANS
Representative for the Estate          :
of Debtor, Bayonne Medical                     VOLUME I
Center,                                :    (Pages 1-236)

                    Plaintiff,         :

                    -vs-               :

BAYONNE/OMNI DEVELOPMENT,              :
L.L.C., a New Jersey limited
liability company; et al.,            :

                    Defendants.        :
- - - - - - - - - - - - - - - - - - - -

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

                    DepoLink
        Court Reporting & Litigation Support Services
            Phone (973) 353-9880    Fax (973) 353-9445
                    www.depolinklegal.com

Page 83

1   Vinny Lombardo told me by way of saying what our

2   policy was with respect to enforceability or

3   collectability, however you want to put it, that she

4   had never made the full pledge and that we had not

5   done anything about it, even though she was a

6   trustee, and we hold trustees to the highest

7   standard of any donor.  And I would not have known

8   that if Vinny had not told me, because that was a

9   Bayonne policy, to not release any information about

10  donors, what they pledged, if they still owed, if

11  they had reneged.  It was pretty tightly controlled.

12       Q.     During your tenure did it come to

13  your attention that there were others besides Dr.

14  Wozniak who failed to pay their pledges in full?

15       A.     Oh, yeah, there were a number.

16       Q.     During your tenure did BMC take any

17  legal action to collect any of those pledges?

18            MR. FALANGA:  Object to the form.

19       A.     That's the third part of the

20  conversation I had with Mr. Lombardo.  I asked him,

21  Do we go after, do we take legal action if a pledge

22  isn't enforced?  And he made a theatrical play of

23  stating never in the history of Bayonne Hospital

24  have we ever pursued anyone for a pledge.

25       Q.     Did there come a time that it came to

# EXHIBIT
# #46

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,       :

            Debtor,              :       **ORIGINAL**

BAYONNE MEDICAL CENTER,             :
Debtor and
Debtor-in-Possession; and           :
ALLEN D. WILEN, in his                  DEPOSITION OF:
capacity as Liquidating             :
Trustee and Estate                      ROBERT H. EVANS
Representative for the Estate       :
of Debtor, Bayonne Medical              VOLUME I
Center,                             :   (Pages 1-236)

          Plaintiff,            :

         -vs-                    :

BAYONNE/OMNI DEVELOPMENT,           :
L.L.C., a New Jersey limited
liability company; et al.,          :

         Defendants.           :
------------------------------------

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1    Q.    And did you discuss with anyone other

2  than Marvin and Carrie this interest of his in

3  having the written assurance that you just

4  described?

5         MR. FALANGA:   Object to the form.

6    A.    No, I discussed it with -- well,

7  first I discussed it with Marvin and with Carrie,

8  you know, what's his basis for asking this?  And I

9  was told that it was (a), a lot of money, and (b),

10  while he fully planned and assumed that we would

11  have this nice, long-term relationship, there was no

12  guarantee.  And should we be in a place that was

13  different than the place we're in, should his

14  business be in a place that's different than it's

15  in, he would not want to be hounded or held

16  responsible for the pledge.

17         I wanted to understand that, because I

18  wanted to understand his level of commitment.  My

19  thinking after hearing that was, you know, those are

20  probably questions I would have asked, too.

21  $5,000,000 is a lot of money.

22         I then went and spoke to Vinny Lombardo and

23  said that I needed his guidance on this.  That was

24  his guidance in that conversation that we had in the

25  cafeteria in Bayonne Medical Center.  That this was

# EXHIBIT
# #47

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,      :

                 Debtor,            :      **ORIGINAL**

BAYONNE MEDICAL CENTER,             :
Debtor and
Debtor-in-Possession; and           :
ALLEN D. WILEN, in his                     DEPOSITION OF:
capacity as Liquidating             :
Trustee and Estate                         ROBERT H. EVANS
Representative for the Estate       :
of Debtor, Bayonne Medical                 VOLUME I
Center,                             :      (Pages 1-236)

                 Plaintiff,         :

                 -vs-               :

BAYONNE/OMNI DEVELOPMENT,           :
L.L.C., a New Jersey limited
liability company; et al.,          :

                 Defendants.        :
- - - - - - - - - - - - - - - - - - -

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1          Q.        And did you discuss with anyone other

2    than Marvin and Carrie this interest of his in

3    having the written assurance that you just

4    described?

5                    MR. FALANGA:   Object to the form.

6          A.        No, I discussed it with -- well,

7    first I discussed it with Marvin and with Carrie,

8    you know, what's his basis for asking this?  And I

9    was told that it was (a), a lot of money, and (b),

10   while he fully planned and assumed that we would

11   have this nice, long-term relationship, there was no

12   guarantee.  And should we be in a place that was

13   different than the place we're in, should his

14   business be in a place that's different than it's

15   in, he would not want to be hounded or held

16   responsible for the pledge.

17          I wanted to understand that, because I

18   wanted to understand his level of commitment.  My

19   thinking after hearing that was, you know, those are

20   probably questions I would have asked, too.

21   $5,000,000 is a lot of money.

22          I then went and spoke to Vinny Lombardo and

23   said that I needed his guidance on this.  That was

24   his guidance in that conversation that we had in the

25   cafeteria in Bayonne Medical Center.  That this was

1       A.      I have.

2       Q.      Can you identify it?

3       A.      It's what we refer to as a "comfort

4    letter."

5       Q.      Who's the "we" who refers it to that

6    way?

7       A.      The senior management team came to

8    refer to this as a comfort letter.

9       Q.      This particular letter?

10      A.      This particular letter.

11      Q.      That's your signature?

12      A.      It is.

13      Q.      Who drafted the text of the letter?

14      A.      I don't recall, but I don't think it

15   was me, just because it's not my style of writing.

16   But I did read it and I did sign it.

17      Q.      And do you know if this was delivered

18   to Avery?

19      A.      I don't know that it was, but I

20   assume it was.

21      Q.      In your tenure at BMC, did you give

22   comfort letters to other pledgors or prospective

23   pledgors?

24              MR. FALANGA:  Object to the form.

25      A.      I don't recall giving a comfort

DEPOLINK COURT REPORTING & LITIGATION SERVICES (973) 353-9880

# EXHIBIT
# #48

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,          :

                 Debtor,               :        **ORIGINAL**

BAYONNE MEDICAL CENTER,                :
Debtor and
Debtor-in-Possession; and             :
ALLEN D. WILEN, in his                         DEPOSITION OF:
capacity as Liquidating                :
Trustee and Estate                             ROBERT H. EVANS
Representative for the Estate          :
of Debtor, Bayonne Medical                     VOLUME I
Center,                                :        (Pages 1-236)

                 Plaintiff,            :

                 -vs-                  :

BAYONNE/OMNI DEVELOPMENT,              :
L.L.C., a New Jersey limited
liability company; et al.,             :

                 Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - -

B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1    finance department, in particular our CFO.  The CFO

2    essentially puts the rep letter in front of a person

3    such as myself, the CFO, and says it's okay to sign

4    and then I sign it.  This particular rep letter

5    probably had at least two signatures besides mine.

6    It probably had Mr. Mohrle's who was the director of

7    finance at the time, it probably had Heather

8    Aaron's.  I would not state now or then that my

9    signature spoke to the enforceability of the pledge.

10        Q.      Other than you, so far as you know,

11   who before December 2005, if anyone, was aware of

12   the existence of the comfort letter, Tab 21?

13               MR. FALANGA:  Objection.

14        A.      I couldn't say, Mr. Gruen, but it was

15   not a secret.  I discussed it with several senior

16   management people.

17        Q.      Who?

18        A.      With Mr. Apsel, with Heather Aaron at

19   the time, with Marv, Carrie Evans.  Also Vinny

20   Lombardo when I asked his advice.  And the fact that

21   it's here, you know, it was probably pulled out of

22   the files of Bayonne Medical Center.  As I said, it

23   is what it is.

24        Q.      I don't mean to be critical, but I'm

25   not entirely sure you answered the question I put,

# EXHIBIT
# #49

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

        Debtor,    :

BAYONNE MEDICAL CENTER,    :
Debtor and
Debtor-in-Possession; and    :
ALLEN D. WILEN, in his          DEPOSITION OF:
capacity as Liquidating    :
Trustee and Estate              ROBERT H. EVANS
Representative for the Estate :
of Debtor, Bayonne Medical          VOLUME I
Center,    :            (Pages 1-236)

        Plaintiff,    :

        -vs-    :

BAYONNE/OMNI DEVELOPMENT,    :
L.L.C., a New Jersey limited
liability company; et al.,    :

        Defendants.    :
----------------------------------

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1   letter to another donor.  However, I would also say

2   we never had a donor of this magnitude before.

3   However, I do recall giving comfort verbally to

4   donors a number of times, as did a lot of the senior

5   management team, that we were not going to make this

6   a debt, this was not going to be binding, things

7   like that.

8          Q.     Can you identify the other donors to

9   whom that advice was given?

10         A.     It's a long time ago, Mr. Gruen.

11         Q.     If you can't, you can't.  I'm just

12  asking if you can.  There's no shame if you can't.

13         A.     Right.  I particularly cannot, but

14  I'm sure there are others who I worked with who

15  could.

16         Q.     Did you ever tell WithumSmith+Brown

17  about this policy of BMC respecting pledges?

18                MR. FALANGA:  Objection to form.

19         A.     I did not.

20         Q.     Do you know whether Carrie did?

21         A.     I do not, no.

22         Q.     Do you know if Marvin did?

23         A.     No, I don't.

24         Q.     Do you know whether anyone did?

25         A.     No.