# EXHIBIT
# #54

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,   :

                Debtor,          :          **ORIGINAL**

BAYONNE MEDICAL CENTER,          :
Debtor and
Debtor-in-Possession; and        :
ALLEN D. WILEN, in his               DEPOSITION OF:
capacity as Liquidating          :
Trustee and Estate                   ROBERT H. EVANS
Representative for the Estate    :
of Debtor, Bayonne Medical            VOLUME I
Center,                          :   (Pages 1-236)

                Plaintiff,       :

                -vs-             :

BAYONNE/OMNI DEVELOPMENT,        :
L.L.C., a New Jersey limited
liability company; et al.,       :

                Defendants.      :
----------------------------------

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GREENBAUM, ROWE, SMITH &

DAVIS, L.L.P., 75 Livingston Avenue, Roseland, New

Jersey, on MONDAY, JUNE 21, 2010, commencing at 9:19

a.m., pursuant to Notice.

                    DepoLink
        Court Reporting & Litigation Support Services
        Phone (973) 353-9880    Fax (973) 353-9445
                www.depolinklegal.com

1    at 12:05 of 5 mill from Omni Asset Management was

2    'no good' and they, Omni, are stating that the

3    pledge was made 'under duress.'  We had received

4    confirm."  At any time before this litigation did it

5    come to your attention that anyone was claiming that

6    Omni was claiming that the pledge was made under

7    duress?

8          A.    It did not.

9          Q.    At any time before this litigation

10   began did it come to your attention from whatever

11   source that a representative of BMC was taking the

12   position that the Omni pledge was renegotiated and

13   as a result became a nullity?

14              MR. FALANGA:  Objection.

15         A.    Could you restate that one more time?

16   I'll try to listen really close.

17         Q.    At any time before this litigation

18   began did it come to your attention that anyone on

19   behalf of BMC took the position that the Omni pledge

20   was renegotiated with Omni, and as a result of the

21   renegotiation became of no force and effect?

22              MR. FALANGA:  Objection.

23         A.    I actually did come to hear, but I

24   don't recall who I heard it from, that the pledge

25   was renegotiated as a result of the ultimate closing

DEPOLINK COURT REPORTING & LITIGATION SERVICES (973) 353-9880

1    with respect to the SNF building, and it had

2    something to do with the size of the project

3    becoming smaller and eliminating the rent.

4         Q.    The leaseback?

5         A.    The leaseback.

6              MR. FALANGA:  Objection.

7         Q.    And you don't know who it was that

8    you heard that from?

9              MR. FALANGA:  Objection.

10         A.    I don't recall who, no, but I do

11    recall hearing it.

12         Q.    Before the litigation began?

13         A.    Correct.

14              MR. FALANGA:  Objection.

15              MR. GRUEN:  How much more time do I

16    have, timekeeper?

17              MR. FALANGA:  Well, you're

18    technically out of time.  I respectfully decline the

19    "timekeeper" designation, but it is after 12:30.

20              MR. GRUEN:  Well, if I've used up my

21    time, I'm not entitled to anymore.

22              (A discussion is held off the record,

23         whereupon a lunch recess is taken.)

24    CROSS-EXAMINATION BY MR. FALANGA:

25         Q.    Mr. Evans, again, for the record, my

# EXHIBIT
# #55

Page 1



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,     :

             Debtor,     :

ALLEN D. WILEN,                   :

             Plaintiff,   :

          -vs-                   :

BAYONNE/OMNI DEVELOPMENT,         :
LLC, et al.,
                     :

             Defendants.  :
----------------------------------

DEPOSITION OF:

HERMAN BROCKMAN

B E F O R E:

     SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1   A       Okay.

2           Q          "QUESTION:  How about your

3   understanding of a pledge to the foundation?

4   Is it your understanding in your experience

5   as a trustee for the board that a pledge is

6   legally binding?

7                    "ANSWER:  It isn't, no."

8   Was that answer of yours accurate?

9   A       I believe so.

10          Q       I'm going to continue reading.

11                   "QUESTION:  You believe it's not.

12                   "ANSWER:  We've had an awful lot of a

13  people who made all kinds of pledges and

14  never paid them to the foundation.

15                   "QUESTION:  That's not what I was

16  asking.  I was asking if you knew whether or

17  not a pledge is a legally binding obligation

18  or not?  And your understanding is you don't

19  believe it is?

20                   ANSWER:  I don't believe it is, no.

21  If it was we would have had a lot of money

22  in the hospital that never came in."

23  Is that answer accurate?

24  A       Yes.

25          Q       And I'm continuing on Line 23 on Page

# EXHIBIT
# #56

Page 1



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

**ORIGINAL**

In re BAYONNE MEDICAL CENTER,   :

            Debtor,   :

ALLEN D. WILEN,   :

            Plaintiff,   :

-vs-   :

BAYONNE/OMNI DEVELOPMENT,   :
LLC, et al.,
              :

            Defendants.

DEPOSITION OF:

HERMAN BROCKMAN

-----------------------------------

B E F O R E:

       SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1      Q      As far as you know, did the

2    foundation ever sue anyone to collect on a pledge?

3             MR. PIZZI:  Objection.

4    A      Not that I know of.

5      Q      As far as you know, did the hospital,

6    BMC, ever sue anyone to collect on a pledge?

7    A      Not that I know of.

8      Q      Withum, Smith & Brown, do you know

9    who they are?

10   A      Accounting firm.

11     Q      Did they prepare an audit for BMC

12   for, among other years, the year 2005?

13   A      Yes, I believe they did.

14     Q      And did they, do you know, show on

15   the statements that they prepared the $5,000,000

16   pledge that we've been talking about here this

17   morning as an asset of either the foundation or BMC?

18   A      Yes, I believe they did.

19     Q      And were you on the BMC finance

20   committee?

21   A      As chairman I was ex officio member, but I

22   never attended any finance committee meetings.

23     Q      Were you present at any meeting at

24   which there was a discussion with WS&B about why it

25   is that they showed this pledge on the hospital

# EXHIBIT
# #57



Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

                Debtor,    :

ALLEN D. WILEN,    :

           Plaintiff,    :

      -vs-    :

BAYONNE/OMNI DEVELOPMENT,    :
LLC, et al.,
                     :

          Defendants.
-----------------------------------

**DEPOSITION OF:**

HERMAN BROCKMAN

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1    Bayonne Medical Center.  I have a few questions for

2    you.

3            You told us that you were introduced to Mr.

4    Eisenreich sometime first somewhere at the hospital,

5    right?

6    A    Yes.

7            Q    And do you recall that that was

8    around the time you heard about the pledge from Mr.

9    Evans?

10   A    I don't know if it was around the same time

11   or not.  I was just there, he was passing in the

12   hall and they introduced the two of us and I walked

13   away.

14           Q    Was it at the time that the skilled

15   nursing facility was being talked about?

16   A    Yes.

17           Q    And you told us that there were a

18   couple of other entities that were competing for a

19   role in the development of the skilled nursing

20   facility that was associated with Bayonne Medical

21   Center, right?

22   A    Yes.

23           Q    Did you, when you heard about the

24   pledge, connect the pledge that Mr. Eisenreich made

25   or his entities made to the hospital with the

1    selection of Mr. Eisenreich's entities as the entity

2    to partner with on the skilled nursing facility?

3                    MR. GRUEN:  Objection to form.

4    A     No.

5          Q     Previously you were shown an exhibit

6    called D-19.  If you could look in that pile of

7    exhibits.

8    A     Yes, I read this letter.

9          Q     Now, you told us that you first saw

10   this when Mr. Eisenreich brought it to your

11   attention, correct?

12   A     Yes.

13         Q     Where were you at the time?

14   A     In the pharmacy.

15         Q     What's "the pharmacy"?

16   A     Brockman's Pharmacy.

17         Q     Where is it located?

18   A     78 Avenue C, Bayonne, New Jersey.

19         Q     And are you the owner of that

20   pharmacy?

21   A     No more.  I sold it five years ago.

22         Q     Is any member of your family

23   associated with the pharmacy other than you?

24   A     No.

25         Q     But you still work there?

# EXHIBIT
# #58

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11



In re BAYONNE MEDICAL CENTER,        :

                    Debtor,           :

ALLEN D. WILEN,                       :

                    Plaintiff,        :        DEPOSITION OF:

                                      :        HERMAN BROCKMAN

               -vs-                   :

BAYONNE/OMNI DEVELOPMENT,             :
LLC, et al.,
                                      :
                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -


B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1          Q          Let me show you what was previously

2   marked at the 2004 Examination as Exhibit D-23.   And

3   there are two parts of it:   One is a document dated

4   December 13, 2005, and another is a document dated

5   November 30th, 2005.   And I'd ask you to look at

6   these and tell me whether you've ever seen them

7   before.

8                    MR. GRUEN:   Mr. Novak.

9                    MR. NOVAK:   Off the record.

10                    (A discussion is held off the record.)

11   A     No, I never saw this.

12          Q          Neither of the documents, the

13   December nor the November document?

14   A     No.   No.

15          Q          Did it ever come to your attention,

16   through reports by Mr. Evans or otherwise, that the

17   long-term care project was being pursued as a

18   partnership between BMC and an Eisenreich entity?

19   A     Yes.

20          Q          And ultimately a partnership between

21   BMC and an Eisenreich entity was not formed for the

22   purpose of developing this project; is that correct?

23                    MR. PIZZI:   Object to the form.

24   A     Yes.

25          Q          And do you know why the partnership

1    approach to the development of a long-term care

2    facility did not come to fruition?

3    A      We were told it would affect our

4    not-for-profit status and also it would affect the

5    bond refinancing.

6          Q      Who was it who told you that?

7    A      Mr. Evans.

8          Q      And did Mr. Evans then say that those

9    considerations made it impossible or impractical or

10   otherwise to pursue the partnership approach?

11   A      I don't know what he said, just that it

12   couldn't be done.

13         Q      It couldn't be done that way.  And

14   when Mr. Evans said that it couldn't be done that

15   way, did he say then or thereafter how the project

16   could be done consistent with those constraints?

17   A      Yes, he said that it would have to be a sale

18   of the Bell building property.

19         Q      And ultimately was the Bell building

20   property sold to an Eisenreich entity?

21   A      Yes.

22         Q      From the time that Mr. Evans

23   announced that the project would have to be a sale

24   and couldn't be a partnership until the sale

25   actually took place, were there negotiations between

# EXHIBIT
# #59

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11



In re BAYONNE MEDICAL CENTER,   :

                 Debtor,   :

ALLEN D. WILEN,   :

             Plaintiff,   :

        -vs-   :

BAYONNE/OMNI DEVELOPMENT,   :
LLC, et al.,
                        :

           Defendants.
------------------------------------

DEPOSITION OF:

HERMAN BROCKMAN

B E F O R E:

     SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1   A       Fair market value was to mean what the

2   property was worth compared with any other property

3   for sale.

4         Q       And who told you that fair market

5   value was what BMC was looking to accomplish in

6   connection with negotiation of the sale price with

7   Eisenreich?

8   A       I don't know who told us.

9               MR. GRUEN:  Off the record:

10              (A discussion is held off the record.)

11        Q       I'm showing you from the package of

12  exhibits previously marked at Vincent Lombardo's

13  deposition an exhibit that had been previously

14  marked to that D-4 at your February 2009

15  examination.  It purports to be minutes.  It's

16  entitled "Board of Trustee Meeting, June 8th, 2006

17  Minutes."  Have you seen this document before?

18  A       I'm sure I have.

19        Q       And if you would turn to Page 4, and

20  I'm going to read this into the record because it's

21  short, under the heading "Skilled Nursing Facility,"

22  quote, "By way of background, Mr. Brockman advised

23  that initially we were seeking to structure the SNF

24  project as a land lease arrangement with Omni Asset

25  Management.  It has recently come to light that this

1   will not be an acceptable arrangement, given Bayonne

2   Medical Center's not-for-profit status."  And I'm

3   going to stop the quote there.  The inability of BMC

4   to structure the transaction as a land lease

5   arrangement with Omni Asset Management, was that

6   land lease arrangement part of the proposed

7   partnership arrangement?

8   A     Yes.

9        Q     Who was it, if anyone, who told you

10  that it was not an acceptable arrangement to enter

11  into a land lease arrangement with Omni Asset

12  Management given Bayonne Medical Center's

13  not-for-profit status?

14  A     I believe it was Rob Evans.

15       Q     Anyone else, or was he the exclusive

16  source of that information?

17  A     He was the spokesman.  I don't know the

18  source.

19       Q     I'm continuing with the quote.  "In

20  order for Raymond James to proceed with the bond

21  financing and to move forward with the SNF project,

22  Mr. Brockman stated it may be necessary to sell the

23  land at the current market rate.  He explained

24  further details of this proposal, and added that all

25  necessary covenants will be included to protect and

1   ensure the best interests of Bayonne Medical

2   Center."  Do you recall making this report to the

3   board in June of 2006?

4   A       I don't recall it, but it's in the minutes,

5   so I said it.

6           Q       Do you know what further details of

7   the proposal it was that you shared with the board,

8   if any, on June 8th, 2006?

9   A       No.

10          Q       Do you know what the "necessary

11  covenants" were that this document refers to and

12  says that you discussed before the board kat this

13  meeting in June 2006?

14  A       I believe the covenants were something to do

15  with lines going through the property underground or

16  something, whether it was electric, gas, I don't

17  know what it was.

18          Q       Did the covenants, as you understood

19  them, include commitment of Omni Asset Management to

20  develop the Bell building site for an SNF?

21  A       Yes, it had to be part of the agreement,

22  yes.

23          Q       And that was part of the necessary

24  covenants that you explained to the board would be

25  included in the deal to protect the interests of

1    BMC?

2    A    Yes.  Are we finished with this?

3        Q    Just hold onto them for one second.

4    On the next page, Page 5, I'm going to read

5    this and then I'm going to give it back to you.

6    "With no further questions, Mr. Brockman presented

7    the following resolution:  For action:  The board of

8    trustees of Bayonne Medical Center approves and

9    authorizes administration to proceed in this matter

10   and if deemed necessary, arrange for the sale of the

11   land at market value.  Upon a motion duly made,

12   seconded and unanimously carried, this resolution

13   approved."

14   A    I read it already.

15       Q    Do you recall that event?

16   A    I don't recall it, but it's in the minutes,

17   so I said it.

18       Q    It says here that the administration

19   is authorized to proceed if necessary to arrange for

20   a sale of the land at market value.  Do you know

21   what that means, "if necessary"?

22   A    No, I don't.

23       Q    So I'm going to ask you to open to

24   Page 90 of the transcript of your 2004 Examination.

25   A    Okay.

# EXHIBIT
# #60

Page 1



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

                Debtor,          :

ALLEN D. WILEN,                  :

                Plaintiff,       :           DEPOSITION OF:

                                 :           HERMAN BROCKMAN

        -vs-                     :

BAYONNE/OMNI DEVELOPMENT,        :
LLC, et al.,
                                 :

                Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - -

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

1     that he had a signed contract with Robert

2     Evans.

3          "QUESTION:  And when you say 'close

4     the deal,' what was your understanding of

5     the deal or what did Mr. Eisenreich say was

6     the deal at that time?

7          "ANSWER:  Well, he showed me a

8     contract and it stated that he would by the

9     property, I believe, for $2,000,000."

10     And that answer is accurate?

11   A     Yes.

12          Q     Had you ever met Mr. Eisenreich

13   before?

14   A     Once, I believe, early on.  I was introduced

15   to him, that's all.

16          Q     In what context, do you remember?

17   A     He was in the hospital, I guess for a

18   meeting, and I happened to be in the hospital.  They

19   just introduced him to me.

20          Q     What, if anything, did you say to Mr.

21   Eisenreich after he showed you the contract and

22   stated that he was prepared to buy the property for

23   $2,000,000?

24   A     I believe there was a portion of the

25   contract that said we were going lease back X amount

1    square feet of space, two floors.  I told him I

2    didn't need the space and I would not accept it.

3          Q       Before this exchange with Mr.

4    Eisenreich, had you seen the contract of sale

5    before?

6    A      No.

7          Q       Had you seen the lease before?

8    A      No.

9          Q       But you knew from your conversation

10   with Mr. Eisenreich or you knew before then that the

11   sale to Eisenreich included a leaseback by the

12   hospital of a portion of the space to the building?

13   A      Yes, I believe Mr. Evans had stated that

14   fact earlier on, when they first talked about the

15   nursing home.

16         Q       And that was that as part of the

17   $2,000,000 deal, that the hospital would be leasing

18   back some space in the building to be built at the

19   Bell Street building location --

20                 MR. PIZZI:  Objection to form.

21         Q       -- by Mr. Eisenreich's company?

22   A      Yes.

23         Q       Do you recall how much space Mr.

24   Evans said the hospital would be leasing in the

25   building to be built on the Bell Street property?

1    A        I believe they said two floors.  I don't

2    recall the amount of space.

3           Q        And do you know what it was that the

4    hospital was intending to use those two floors for

5    had the lease been consummated?

6    A        No.

7           Q        Did anyone ever tell you what those

8    two floors were going to be used for the hospital's

9    purposes at that building?

10   A        To.

11          Q        So at this meeting when Mr.

12   Eisenreich presented the contract and told you that

13   he wanted to close, that's the same meeting at which

14   you said that the hospital would not lease back

15   space at the building; is that correct?

16   A        Yes.

17          Q        And did Mr. Eisenreich react to that

18   statement of yours?

19   A        Yes.  He had said he had a signed contract

20   by Mr. Evans.

21          Q        For the leaseback space?

22   A        Yes.

23          Q        And what, if anything, did you say in

24   response to that?

25   A        I said I would not go through with the

1    contract with those terms.  I didn't need the space.

2          Q        And did he react to that?

3    A      Not that day.  He came back I think a few

4    days later and agreed to terminate the lease part of

5    the contract.

6          Q        Before agreeing to terminate the

7    leaseback part of the contract, did he have any

8    discussion with you about a price reduction on the

9    land sale as a result of eliminating the lease?

10   A      Yes, he wanted to lower the price and I said

11   no.

12         Q        Did he ultimately, as you understood

13   it, agree then to proceed with the deal without the

14   leaseback feature?

15   A      Yes.

16         Q        In the package of previously marked

17   documents is D-11.  It's the document that's

18   referred to as "This agreement of August 24, '06,"

19   it's the lease, and the first heading says "Term of

20   the Lease."

21   A      Okay.

22         Q        You have that document in front of

23   you?  I think it's D-11.

24   A      Yes, I do.

25         Q        And is this the lease that you told

# EXHIBIT
# #61

## Magnaye, Lourdes

**From:** Auriemma, Robert
**Sent:** Tuesday, December 12, 2006 5:22 PM
**To:** Magnaye, Lourdes
**Subject:** Revised October P & L

Lourdes,
We need to copy the YTD Only version of the October financial statement file and make the following modification to the Net Loss from Operations:

**Net (Loss) from Operations before Prior Year Adjustments:**          $16,037

**Eliminate Prior Year Adjustments:**

   **2004 Medicare Settlement**                                    (5,100)

   **Restatement of Accounts Receivable: Write-off of 2005 Pledge**    (4,717)


**Net (Loss) from Operations  applicable to 2006**                      $6,220

This change in format is only for a specific purpose to be used by Paul and will not be distributed to anyone else. The October statement once it is finalized will follow the usual one-line format.

Thanks,
Bob

12/13/2006                                                                                          BMC031420