# EXHIBIT
# #70

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,   :

                  Debtor,   :

BAYONNE MEDICAL CENTER,   :
Debtor and
Debtor-in-Possession; and   :
ALLEN D. WILEN, in his
capacity as Liquidating   :   DEPOSITION OF:
Trustee and Estate
Representative for the Estate   :   MARVIN APSEL
of Debtor, Bayonne Medical
Center,   :

                Plaintiff,   :

          -vs-   :

BAYONNE/OMNI DEVELOPMENT,   :
L.L.C., a New Jersey limited
liability company; et al.,   :

         Defendants.   :

**ORIGINAL**

----------------------------------

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

THURSDAY, OCTOBER 14, 2010, commencing at 10:05

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1   conversation in which I casually talked about

2   pledges with the foundation person, but I was not

3   absolutely sure.

4        He then basically said, I want a letter from

5   Rob Evans stating that the pledge that I am making

6   is essentially nonbinding.  He went into concerns

7   with what if my business gets disrupted or I can't

8   make a pledge.  I don't want to be in that position

9   of not being able to meet my obligations.

10       Q.   What else, if anything, did he say?

11       A.   Who?

12       Q.   Avery, he's the "he."  You're the

13   "you" and he's the "he"?

14       A.   Thank you very much for that

15   clarification.

16       Q.   If anything.

17       A.   I don't believe there was anything of

18   substance beyond that.

19       Q.   What, if anything, did you say in

20   response to that declaration of his?

21       A.   I said, "I will communicate that to

22   Rob Evans immediately, and we will get the issue

23   resolved."

24       Q.   And did you communicate that to Rob

25   Evans?

1.      A.      Most assuredly.

2       Q.      Was it the same day?

3       A.      It was the same day.

4       Q.      How did you communicate it to Rob

5    Evans, was it orally or in writing?

6       A.      Orally, I went into his office

7    sometime later that afternoon and spoke with him.

8       Q.      Were the two of you alone or was

9    there anybody else in the room?

10      A.      We were alone.

11      Q.      And you told him what?

12      A.      I gave him the signed pledge card.

13   He was very happy.  But I also informed him that

14   Avery had a concern about the binding obligation on

15   his part for the pledge.  And that he was requesting

16   a letter from Rob Evans which basically communicated

17   to him that the pledge would be nonbinding.

18      Q.      And what, if anything, did Rob Evans

19   say in response to that?

20      A.      He said he would do it.

21      Q.      Anything else that you recall in that

22   conversation with Rob Evans?

23      A.      No.

24      Q.      Let me take you back to the meeting

25   with Avery.  It looks like I missed something

# EXHIBIT
# #71

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,      :

            Debtor,      :      **ORIGINAL**

BAYONNE MEDICAL CENTER,      :
Debtor and
Debtor-in-Possession; and      :
ALLEN D. WILEN, in his
capacity as Liquidating      :   DEPOSITION OF:
Trustee and Estate
Representative for the Estate   :   MARVIN APSEL
of Debtor, Bayonne Medical
Center,      :

          Plaintiff,      :

        -vs-      :

BAYONNE/OMNI DEVELOPMENT,      :
L.L.C., a New Jersey limited
liability company; et al.,      :

        Defendants.      :
_____

B E F O R E:

     SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

THURSDAY, OCTOBER 14, 2010, commencing at 10:05

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1          Q.       You can answer the question.

2          A.       I cannot remember.

3          Q.       Did anyone ever tell you who it was

4    who filled in the blanks on this document?

5          A.       No.

6          Q.       After delivering the signed pledge

7    document, I should say a signed pledge document to

8    Rob Evans, and telling him about the letter that

9    Avery wanted, did you have any further involvement

10   in the process of obtaining a pledge from Avery?

11         A.       No, none.

12         Q.       Do you recall having discussed at any

13   time any issue related to a pledge from Avery with

14   anyone at BMC, beyond the testimony you've already

15   given about your conversations with Lombardo and

16   Evans?

17         A.       After I met with Rob Evans and gave

18   him the pledge form, we walked down to the office of

19   Heather Aaron, the CFO.  Rob presented the pledge

20   form to Heather Aaron.  And I believe there was a

21   conversation replicating what I had told Evans about

22   Avery's request for a letter from Evans about the

23   issue of the pledge being nonbinding.

24         Q.       So we can get it isolated, is that

25   the only other conversation that you recall having

# EXHIBIT
# #72

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

                 Debtor,          :

                                          **ORIGINAL**

BAYONNE MEDICAL CENTER,          :
Debtor and
Debtor-in-Possession; and        :
ALLEN D. WILEN, in his
capacity as Liquidating           :   DEPOSITION OF:
Trustee and Estate
Representative for the Estate    :   MARVIN APSEL
of Debtor, Bayonne Medical
Center,                          :

                 Plaintiff,       :

                 -vs-             :

BAYONNE/OMNI DEVELOPMENT,         :
L.L.C., a New Jersey limited
liability company; et al.,       :

                 Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - -

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

THURSDAY, OCTOBER 14, 2010, commencing at 10:05

a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1        A.        I'm not aware of that.

2        Q.        Did you attend any meetings or

3    luncheons or dinners at the time of the vascular

4    campaign at which a pledge counselor of BMC's made a

5    presentation?

6        A.        I don't recall being at any such

7    meeting.

8        Q.        Did you ever discuss with anyone at

9    BMC, outside of the context of Avery and Omni's

10   pledge, whether the hospital had a policy with

11   respect to enforcing pledges?

12       A.        No.

13       Q.        Do you know the name Wozniak, Dr.

14   Wozniak?

15       A.        Dr. Deborah Wozniak.

16       Q.        Do you know whether Dr. Wozniak made

17   a pledge to BMC?

18       A.        I don't know.

19       Q.        Do you know if BMC ever filed a

20   lawsuit against any pledgor to enforce a pledge?

21       A.        I'm not aware of any such action.

22                 MR. PIZZI:  Object to the form, no

23   foundation.  You can answer.

24       Q.        I think it's in Carrie Evans-1, the

25   volume you have in front of you, Tab 22.

# EXHIBIT
# #73

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,,  :
                                :          DEPOSITION OF
      Debtor,                   :
                                :          PAUL MOHRLE
         v.                     :
                                :
                                :
BAYONNE MEDICAL CENTER, Debtor  :
and Debtor-in-Possession; and   :
ALLEN D. WILEN, in his capacity as:   **ORIGINAL**
Liquidating Trustee and Estate  :
Representative for the Estate of:
Debtor, Bayonne Medical Center, :
                                :
      Plaintiff,                :
                                :
         v.                     :
                                :
BAYONNE/OMNI DEVELOPTMENT,      :
L.L.C., a New Jersey limited    :
liability company; et al.,      :
                                :
      Defendants.               :
_____:

          T R A N S C R I P T of Deposition Proceedings

in the above-entitled matter, as taken by and before MARIA

F. PIOTROWSKI, Certified Court Reporter and Notary Public of

the State of New Jersey, at the offices of SAIBER ATTORNEYS

AT LAW, 18 COLUMBIA AVENUE, FLORHAM PARK, NEW JERSEY, on

WEDNESDAY, SEPTEMBER 15th, 2010 commencing at 10:12 a.m..

          DepoLink Court Reporting & Litigation Support Services
          Phone (973) 353-9880          Fax (973) 353-9445
                   www.depolinklegal.com

1        Q.        So far as you know was any action -- what

2    action, if any, was taken against pledgors before reserves

3    were established for their pledges?

4                    MR. GROHS:  Object to the form.

5                    MR. FALANGA:  Object to the form.

6        A.        I don't know.

7        Q.        What action, if any, was taken by the

8    Foundation, if you know, to collect pledges on account of

9    which reserves have been established?

10                   MR. GROHS:  Object to the form.

11                   MR. FALANGA:  Object to the form.

12       A.        I don't know.

13       Q.        What action, if you know, was taken by the

14   Foundation, whether a reserve were established or not?

15                   MR. FALANGA:  Object to the form.

16                   MR. GROHS:  Object to the form.

17       A.        I don't know.  I don't know.

18       Q.        To your knowledge was a lawsuit ever brought

19   against the pledgor by the Foundation?

20       A.        Not to my knowledge.

21       Q.        To your knowledge was any other action, short

22   of a lawsuit, taken against pledgors to enforce their

23   pledges?

24                   MR. FALANGA:  Object to the form.

25                   MR. GROHS:  Object to the form.

# EXHIBIT #74

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

              Debtor,            :         COPY

BAYONNE MEDICAL CENTER,          :
Debtor and
Debtor-in-Possession; and        :
ALLEN D. WILEN, in his                DEPOSITION OF:
capacity as Liquidating          :
Trustee and Estate                  AVERY EISENREICH
Representative for the Estate    :
of Debtor, Bayonne Medical           VOLUME I
Center,                          :   (Pages 1-187)

              Plaintiff,         :

              -vs-               :

BAYONNE/OMNI DEVELOPMENT,         :
L.L.C., a New Jersey limited
liability company; et al.,       :

              Defendants.        :
------------------------------------

B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

Page 59

1   his position was?

2        A.      I actually never figured out any of

3   their titles.

4        Q.      And when Ms. Evans approached you

5   while you were at the hospital, was that the first

6   time you were ever physically in her presence?

7        A.      It could be, I don't remember.

8        Q.      Where were you when you had this

9   conversation that led to you putting your signature

10  on Exhibit P-70?

11       A.      Her office.

12       Q.      Was anyone else present?

13       A.      No.  I didn't sign it in front of

14  her.

15       Q.      Right.  I didn't say you did.  You

16  met with her and it led to you putting your

17  signature on this; is that true?

18       A.      That's true.

19       Q.      So tell us as best you recall what

20  she said to you and you said to her in this meeting

21  in her office in or around October 14, 2005.

22       A.      She wanted a pledge to the hospital

23  in order to help the hospital build out the space

24  and cover rent for the first couple of years and

25  their leased space, because the space wasn't going

1    to be revenue generating for the first couple of

2    years.  To which she said, "If you give us a pledge,

3    it could offset that cost."

4         Q.    And did you respond?

5         A.    To which I said, "And if the nursing

6    home doesn't get built or the hospital doesn't sign

7    its lease, why would I agree to give you a pledge?"

8    To which she responded, "It's unenforceable,

9    non-binding."  To which I said, "Get me a letter

10   accordingly."

11        Q.    Anything else said during that

12   conversation?

13        A.    I'm sure there were other things

14   said.  I don't recall what they were.

15        Q.    This is my opportunity to ensure that

16   I've exhausted your memory.  Did she say anything

17   else to you in this conversation?

18        A.    I don't think so.

19        Q.    Now, as of this time frame, you

20   didn't have a letter of intent, correct?

21        A.    Correct.

22        Q.    So you didn't have any binding

23   contract with the hospital, correct?

24        A.    Correct.

25              THE WITNESS:  When you asked me about

# EXHIBIT
# #75

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,   :

                Debtor,   :        COPY

BAYONNE MEDICAL CENTER,   :
Debtor and
Debtor-in-Possession; and   :
ALLEN D. WILEN, in his         DEPOSITION OF:
capacity as Liquidating   :
Trustee and Estate         AVERY EISENREICH
Representative for the Estate   :
of Debtor, Bayonne Medical       VOLUME I
Center,   :   (Pages 1-187)

         Plaintiff,   :

       -vs-   :

BAYONNE/OMNI DEVELOPMENT,   :
L.L.C., a New Jersey limited
liability company; et al.,   :

       Defendants.   :
-----------------------------------

B E F O R E :

     SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.


DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

Page 63

1    for my lease, and that gave them the ability to do

2    it.

3            Q.    You've just told us your explanation

4    for how you get the $5,000,000; is that right?

5            A.    Correct.

6            Q.    Did she say anything to you about the

7    $5,000,000?

8            A.    She said something to the effect that

9    it will cost them at least $100 a square foot to

10   buildout.

11           Q.    So this is something in the meeting

12   that she said to you that you now recall, right?

13           A.    With respect to the buildout and the

14   rent abatement.

15           Q.    So she said it's going to cost $100 a

16   square foot to build out; is that right?

17           A.    Approximately.

18           Q.    How does that connect to the

19   $5,000,000 figure that's on Exhibit P-70?

20           A.    It's $4,000,000, plus the rent

21   abatement.

22           Q.    So 40,000 square feet is two floors

23   of 20,000 square feet?

24           A.    Correct.

25           Q.    And so you say Ms. Evans came up with

# EXHIBIT
# #76

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,     :

                Debtor,            :          COPY

BAYONNE MEDICAL CENTER,           :
Debtor and
Debtor-in-Possession; and         :
ALLEN D. WILEN, in his                  DEPOSITION OF:
capacity as Liquidating           :
Trustee and Estate                    AVERY EISENREICH
Representative for the Estate     :
of Debtor, Bayonne Medical            VOLUME I
Center,                           :   (Pages 1-187)

                Plaintiff,         :

            -vs-                   :

BAYONNE/OMNI DEVELOPMENT,          :
L.L.C., a New Jersey limited
liability company; et al.,         :

                Defendants.        :
-----------------------------------

B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.


DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1    to be revenue generating for the first couple of

2    years.  To which she said, "If you give us a pledge,

3    it could offset that cost."

4           Q.     And did you respond?

5           A.     To which I said, "And if the nursing

6    home doesn't get built or the hospital doesn't sign

7    its lease, why would I agree to give you a pledge?"

8    To which she responded, "It's unenforceable,

9    non-binding."  To which I said, "Get me a letter

10   accordingly."

11          Q.     Anything else said during that

12   conversation?

13          A.     I'm sure there were other things

14   said.  I don't recall what they were.

15          Q.     This is my opportunity to ensure that

16   I've exhausted your memory.  Did she say anything

17   else to you in this conversation?

18          A.     I don't think so.

19          Q.     Now, as of this time frame, you

20   didn't have a letter of intent, correct?

21          A.     Correct.

22          Q.     So you didn't have any binding

23   contract with the hospital, correct?

24          A.     Correct.

25                 THE WITNESS:  When you asked me about

# EXHIBIT
## #77

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,   :

　　　　　　　　　Debtor,   :

BAYONNE MEDICAL CENTER,   :
Debtor and
Debtor-in-Possession; and   :
ALLEN D. WILEN, in his           DEPOSITION OF:
capacity as Liquidating   :
Trustee and Estate               AVERY EISENREICH
Representative for the Estate   :
of Debtor, Bayonne Medical           VOLUME I
Center,   :                      (Pages 1-187)

　　　　　　　　　Plaintiff,   :

　　　　　　　　　-vs-   :

BAYONNE/OMNI DEVELOPMENT,   :
L.L.C., a New Jersey limited
liability company; et al.,   :

　　　　　　　　　Defendants.   :
-----------------------------------

B E F O R E:

　　　　SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.


DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1    pledge before you signed it; is that right?

2          A.    Hindsight, I should have.

3          Q.    I need an answer to the question.

4    You didn't think about talking to Mr. Gruen or

5    another lawyer before you signed a pledge for

6    $5,000,000, is that what you're going to tell us?

7          A.    Correct.

8          Q.    And Mr. Gruen was among the counsel

9    available to you at the time, right?

10         A.    He was.

11         Q.    Take a look at Exhibit P-78, which is

12   a letter dated February 12, 2009 from Richard Honig

13   to Stephen Falanga at Connell Foley, reference this

14   case.  I'm going to direct your attention to Page 3,

15   the second paragraph from the bottom.  The question

16   I have for you, Mr. Honig says the following:  "In

17   order to clarify certain of the documents produced,

18   please be advised that the pledge of October 21,

19   2005 by Omni Asset Management replaces the

20   October 14, 2005, of Bayonne Health Care

21   Development, L.L.C., since Bayonne Health Care

22   Development, L.L.C. never formally existed.

23   Moreover, the signature on the pledge is not that of

24   Avery Eisenreich."  Is that statement correct?

25         A.    The signature is not mine?

# EXHIBIT
# #78

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

                    Debtor,       :        COPY

BAYONNE MEDICAL CENTER,           :
Debtor and
Debtor-in-Possession; and         :
ALLEN D. WILEN, in his                    DEPOSITION OF:
capacity as Liquidating           :
Trustee and Estate                        AVERY EISENREICH
Representative for the Estate     :
of Debtor, Bayonne Medical                    VOLUME I
Center,                           :        (Pages 1-187)

                    Plaintiff,    :

                    -vs-          :

BAYONNE/OMNI DEVELOPMENT,         :
L.L.C., a New Jersey limited
liability company; et al.,        :

                    Defendants.   :
----------------------------------

B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.


                    DepoLink
    Court Reporting & Litigation Support Services
        Phone (973) 353-9880    Fax (973) 353-9445
                www.depolinklegal.com

1        A.        No.  I didn't really view it as a

2   pledge of $5,000,000.  I viewed it as part of a

3   proposed lease transaction.

4        Q.        Did you tell anyone in your

5   organization that you were pledging $5,000,000 as

6   part of a lease transaction?

7        A.        I don't have people in my

8   organization I would say that to, either.  So I

9   didn't have such a conversation with anybody.

10       Q.        Now, did you consider just making the

11  economics of the pledge, the $5,000,000, part of the

12  deal itself and throwing the pledge out the window;

13  in other words, not even having a pledge?

14       A.        I brought that up with Ms. Evans.

15       Q.        So tell me what you think I was

16  asking you.

17       A.        I asked her, "Why are we structuring

18  it this way?  Why don't we structure it as a

19  standard rent concession and buildout."

20       Q.        Okay.  And what did she say?

21       A.        She said she and the hospital

22  preferred doing it this way, which was no sweat off

23  my back, it didn't affect me at all, and I said, "No

24  problem."  As long as I was covered with the letter

25  before the lease was signed.  I didn't take it as a

# EXHIBIT
# #79

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,   :

            Debtor,              :          COPY

BAYONNE MEDICAL CENTER,         :
Debtor and
Debtor-in-Possession; and       :
ALLEN D. WILEN, in his              DEPOSITION OF:
capacity as Liquidating         :
Trustee and Estate                  AVERY EISENREICH
Representative for the Estate   :
of Debtor, Bayonne Medical          VOLUME I
Center,                         :   (Pages 1-187)

            Plaintiff,          :

            -vs-                 :

BAYONNE/OMNI DEVELOPMENT,        :
L.L.C., a New Jersey limited
liability company; et al.,       :

            Defendants.          :
------------------------------------

B E F O R E:

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.


                    DepoLink
        Court Reporting & Litigation Support Services
            Phone (973) 353-9880    Fax (973) 353-9445
                www.depolinklegal.com

1    Evans, and then you don't recall anything else

2    coming up during the meeting other than all this

3    detail about the fitting out of the space and all

4    that, right?

5           A.       Correct.

6           Q.       Was Ms. Evans in these meetings where

7    you talked about the details of the lease?

8           A.       She took over a big part of it

9    starting from there.

10          Q.       But before then she had not been in

11   the meeting with you and Marv Apsel, right?

12          A.       I don't remember.

13          Q.       So what happened next with regard to

14   what became of Exhibit P-70?

15          A.       She called me a couple of times for

16   it.  She called me at a later date telling me that

17   the document that I -- then she gave me my comfort

18   letter that told me it's not enforceable.  And then

19   that same day she called me back and said that the

20   pledge that she wrote was wrong.  To which I said

21   that's good, because you have the wrong entity on

22   it, anyway, and she sent me a new one over.  To

23   which I asked her why the date is different, the

24   facility is not going to be built by then.  To which

25   she said, "It's not your business, anyway.  It's not

1    enforceable and non-binding, and you have a letter

2    from us that it's not enforceable, nor have we ever

3    enforced any pledges.  This is what I need for my

4    board," and that was that.

5         Q.    I guess I'm confused.  When did you

6    get Exhibit P-70 and put your signature on it?

7                   MR. GRUEN:  Objection.  That's

8    compound.  Getting it and putting his signature on

9    it would be different things.

10                   MR. PIZZI:  I'll break it up.

11        Q.    When did you get Exhibit P-70 without

12   your signature on it?

13        A.    I'm going to assume on or around the

14   14th.

15        Q.    And you don't know how you got it?

16        A.    She probably sent it over.  I got it

17   from her.

18        Q.    But you don't know if it came from

19   fax or anything, right?

20        A.    No.

21        Q.    And then you signed it, right?

22        A.    No.

23        Q.    You didn't sign it.  What piece of

24   paper came next from Ms. Evans?

25        A.    The letter.

1  And then afterwards you heard from her that the

2  dates were wrong, right?

3       A.    Correct.

4       Q.    When you signed it and returned it to

5  Ms. Evans, you don't know how you did that, right,

6  you don't recall how that took place?

7       A.    I don't remember.

8       Q.    You don't remember if it was mailed

9  or if it was personally delivered or even delivered

10  the day of its date, October 14, 2005, right?

11       A.    It wasn't done on October 14, 2005.

12  That was probably the day I got it.

13       Q.    It was signed after you got the

14  comfort letter, which we're going to talk about in a

15  minute, Exhibit P-62, right?

16       A.    Correct.

17       Q.    And that document has a date of

18  October 21, 2005.  Do you know if you got the

19  comfort letter after or on the date it was dated?

20       A.    I don't remember, but I know I got

21  the letter before I signed the first pledge.

22       Q.    In any event, you signed the first

23  pledge, you gave it to Ms. Evans or got it to her in

24  some way, and you signed it under the name of an

25  entity that did not exist, correct?

1        A.      Correct.

2        Q.      And even though you knew the entity

3   did not exist, you still signed it, right?

4        A.      No, I didn't realize it was the wrong

5   entity.

6        Q.      You thought you may have formed an

7   entity called Bayonne Healthcare Development,

8   L.L.C.?

9        A.      No.  I actually thought it was the

10  entity that was going to purchase the land from the

11  hospital.

12       Q.      This was the entity that was to be

13  the joint venture between the hospital and you?

14       A.      Correct, or the purchaser of the

15  land, right.

16       Q.      So you thought the entity that was

17  going to be the obligor on this pledge was actually

18  going to be an entity that the hospital would have

19  an interest in, is that what you're telling us?

20       A.      Okay, you can look at it that way,

21  but I wasn't thinking of it that way at all.

22       Q.      Well, back in June of 2005 you talk

23  about an entity holding the real estate in which the

24  hospital would have an interest, right?

25       A.      Correct.

# EXHIBIT
# #80

# Bayonne Medical Center

29th Street at Avenue E<br/>Bayonne, New Jersey 07002



February 6, 2006

Mr. Avery Eisenreich
Omni Asset Management
26 Journal Square
16th Floor
Jersey City, New Jersey 07306

Dear Mr. Eisenreich:

Our auditors, WithumSmith&Brown, are conducting an audit of our financial statements. For the purpose of independent verification only, please confirm the following information relating to your Contribution and Promise to Give to Bayonne Medical Center as of December 31, 2005:

| | |
|---|---|
| Date made: | <u>October 21, 2005</u> |
| Amount: | <u>$ 5,000,000</u> |
| Restrictions on period or manner of use: | <u>Unrestricted</u> |

Payable in the following installments:

| | |
|---|---|
| June 1, 2006 | $ 1,000,000 |
| June 1, 2007 | $ 1,000,000 |
| June 1, 2008 | $ 1,000,000 |
| June 1, 2009 | $ 1,000,000 |
| June 1, 2010 | $ 1,000,000 |

Please indicate in the space provided below whether the above is in agreement with your records. If it is not, please furnish our auditors with any information you may have that will help them reconcile the difference.

After signing and dating your reply, please mail it directly to WithumSmith&Brown, Attn. William Oster, 465 South Street, Suite 200, Morristown, NJ 07960 in the enclosed return envelope or email to boster@withum.com.

Very truly yours,

Heather Aaron
Chief Financial Officer /CFO
Bayonne Medical Center

EXHIBIT
P-75
7-20-10

#15

To: WithumSmith&Brown

The above information regarding the Contribution and Promise to Give made to Bayonne
Medical Center agrees with my records at December 31, 2005 with the following exceptions (if
any):

_____

_____

_____

_____

_____

Signature: _____

Title: _____

Date: _____ 3/17/06 _____