# EXHIBIT
# #81

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,   :

                    Debtor,     :                 COPY

BAYONNE MEDICAL CENTER,         :
Debtor and
Debtor-in-Possession; and       :
ALLEN D. WILEN, in his              DEPOSITION OF:
capacity as Liquidating         :
Trustee and Estate                  AVERY EISENREICH
Representative for the Estate   :
of Debtor, Bayonne Medical          VOLUME I
Center,                         :   (Pages 1-187)

                    Plaintiff,  :

               -vs-             :

BAYONNE/OMNI DEVELOPMENT,       :
L.L.C., a New Jersey limited
liability company; et al.,      :

                    Defendants. :
------------------------------------

B E F O R E :

        SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of GRUEN & GOLDSTEIN, ESQS.,

1150 West Chestnut Street, Union, New Jersey, on

MONDAY, JULY 26, 2010, commencing at 11:08 a.m.,

pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880     Fax (973) 353-9445
www.depolinklegal.com

1   confirm to your auditors, or to your accountants?

2          A.     I would have sent that audit confirm

3   if I thought that it was something that was an

4   enforceable pledge and a promise that I would pay

5   and not contingent to the lease or anything of the

6   sort.  If I didn't have a letter or something of

7   that sort, I would have sent it to them.  But I had

8   a letter and I spoke to her many times and she

9   represented it's non-binding.

10         Q.     So what happened first, did you get

11  the audit confirm letter in the mail or did you hear

12  from Carrie Evans you're going to get one and I need

13  you to sign it, which happened first?

14         A.     I think I got one and I threw it out.

15         Q.     So take a look at Exhibit P-75, which

16  is a document dated February 6th, 2006 to Avery

17  Eisenreich, Omni Asset Management, signed by Heather

18  Aaron, Chief Financial Officer/CFO Bayonne Medical

19  Center.  Now, this document has a signature on the

20  second page.  Is that your signature?

21         A.     It looks like it.

22         Q.     And this one is dated March 17, 2006,

23  right?

24         A.     Yes.

25         Q.     And that's your handwriting with the

1    date, correct?

2          A.    No.

3          Q.    Who wrote the date?

4          A.    I don't know.

5          Q.    So you signed it, but someone else

6    wrote the date or you had someone write the date and

7    then you signed it?

8          A.    I don't know.  I didn't fill in the

9    date.

10          Q.    You signed this document and sent it

11    somewhere, right?

12          A.    I don't know if I sent it back to

13    Bayonne or back to Withum.  Actually, I think I sent

14    this, if I remember, with a copy of their letter.

15          Q.    "Their letter" being?

16          A.    Bayonne's.

17          Q.    What letter?

18          A.    The Rob Evans' letter.

19          Q.    So that's your testimony under oath,

20    that you signed the audit confirm and sent the

21    October 21, 2005 letter from Robert Evans with it?

22          A.    If I remember correctly.  I can't

23    remember who I sent it to, if it was sent to Bayonne

24    or sent to Withum.

25          Q.    No, the question to you, sir, was

1   whether you sent the Robert Evans letter with the

2   audit confirm?

3          A.      I said I don't remember.

4          Q.      Why did you say that you think you

5   did?

6          A.      I think I did.

7          Q.      Is that your memory?

8          A.      I think I did.

9          Q.      If the October 21, 2005 letter from

10  Robert Evans to you appears nowhere in the records

11  of WithumSmith+Brown, do you have any reason to

12  dispute the fact that they never got it with the

13  audit confirm?

14         A.      I wouldn't know what they have in

15  their records.

16         Q.      So if they show no evidence of the

17  October 21 letter accompanying the February 6th

18  letter, would you have any reason to question

19  whether their records are accurate?

20         A.      Sure.

21         Q.      So your testimony today is that you

22  think they have the October 21 letter and got it

23  with the February 6th confirm?

24         A.      I said I think so.  In addition to

25  that, Carrie Evans told me she also sent it to them

Page 143

1    when I called her up.

2         Q.    Well, let's go back to the beginning

3    of this.  You think you got a copy of this

4    February 6th, 2006 letter that didn't have your

5    signature on it, right?

6         A.    Uh-huh.

7         Q.    Is that a yes?

8         A.    I'm sorry, ask me the question again.

9    I apologize.

10              MR. PIZZI:  You're reading your

11   BlackBerry.  So would you do us the favor of

12   presenting the question to the witness again.

13              (The pending question is read by the

14        Reporter.)

15        A.    I don't understand your question.

16        Q.    The February 6th letter marked as

17   Exhibit P-75 is two pages, right?

18        A.    Correct.

19        Q.    And you got the document that's so

20   marked in the mail; is that right?

21        A.    I don't know.  I don't know how I got

22   it I said.

23        Q.    You said you got an audit confirm and

24   threw one out; is that right?

25        A.    I think the first one I threw out.

# EXHIBIT
# #82

Prepared by:
Donald F. Campbell, Jr. (DC8924)

**GIORDANO, HALLERAN &
CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, NJ 07701
(732) 741-3900

**GARRETT & TULLY**
4165 East Thousand Oaks Boulevard
Suite 201
Westlake Village, California  91362
(805) 446-4141

Attorneys for WithumSmith+Brown, PC

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re | Chapter 11 |
| BAYONNE MEDICAL CENTER,<br>Debtor. | Case No.   07-15195 (MS) |
| ALLEN D. WILEN, in his official capacity<br>as Estate Representative and Liquidating<br>Trustee, | |
| | Adv. No. 09-1688 (MS) |
| Plaintiff,<br>v. | Judge: Hon. Morris Stern, U.S.B.J. |
| ROBERT H. EVANS, HERMAN<br>BROCKMAN, THEODORE GARELICK,<br>WILLIAM J. CAMPBELL, ROBERT C.<br>MILL, WILLIAM J. FINNERTY,<br>HOWARD LEVINE, ANTHONY WARD,<br>DEBORAH WOZNIAK, AND<br>WITHUMSMITH+BROWN, PC, | |
| Defendants, | |
| WITHUMSMITH+BROWN, PC, | **WITHUMSMITH+BROWN'S RESPONSES<br>TO ROBERT H. EVANS' FIRST SET OF<br>INTERROGATORIES** |
| Third Party Plaintiff, | |
| v. | |

PAUL MOHRLE, HEATHER AARON,
OMNI ASSET MANAGEMENT LLC,
and AVERY EISENREICH,

Third Party Defendants.

**TO:**    **Galit Kierkut, Esq.**
David L. Bruck, Esq.
Greenbaum, Rowe, Smith & Davis LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ  07095

**PLEASE TAKE NOTICE** that defendant WithumSmith+Brown, P.C. ("WS+B")

responds, pursuant to the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil

Procedure, to defendant Robert H. Evans' First Set of Interrogatories.

2

## GENERAL OBJECTIONS

1.  All responses are provided without admitting that they are relevant, material or admissible for purposes of the instant litigation. WS+B hereby reserves the right to object to the admissibility into evidence of any information provided in response to these Interrogatories on grounds of relevancy, materiality or admissibility or any other applicable grounds.

2.  WS+B objects to these Interrogatories to the extent that they seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.  WS+B objects to these Interrogatories to the extent that they are vague and ambiguous.

4.  WS+B objects to these Interrogatories to the extent that they are overly broad or unduly burdensome.

5.  WS+B objects to these Interrogatories to the extent that they request information in the possession or control of Robert Evans or third parties. The scope of WS+B's responses will be limited to only that information within the possession, custody or control of WS+B.

6.  WS+B objects to these Interrogatories to the extent that they seek information that is protected under the attorney-client privilege and/or work-product doctrine. Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of WS+B to object to the use of any such information in any proceeding.

7.  WS+B objects to these Interrogatories to the extent that they seek information and/or documents prepared in anticipation of litigation and/or trial. Inadvertent production of any such

3

information shall not constitute a waiver of any privilege or any other ground for objecting to

discovery with respect to such information, nor shall such inadvertent production waive the right

of WS+B to object to the use of any such information in any proceeding.

8.    WS+B objects to these Interrogatories to the extent that they seek documents that

disclose opinions, mental impressions, conclusions, strategies or legal theories of WS+B, its

counsel or other representatives.  Inadvertent production of any such information shall not

constitute a waiver of any privilege or any other ground for objecting to discovery with respect to

such information, nor shall such inadvertent production waive the right of WS+B to object to the

use of any such information in any proceeding.

9.    WS+B also specifically objects to these interrogatories in that they are an attempt to

circumvent Rule 33(a)(1) of the Federal Rules of Civil Procedure, made applicable herein

pursuant to Rule 7033 of the Federal Rules of Bankruptcy Procedure, and require WS+B to

respond to more than twenty-five (25) interrogatories, including all discrete subparts.


In addition, these responses are made without waiver of and with preservation of the

following:

1.    All questions as to competency, relevancy, materiality, privilege and admissibility

of the responses and the subject matter thereof as evidence for any purpose in any further

proceeding in this action (including the trial of this action) and in any other action;

2.    The right to object to the use of any such responses, or the subject matter thereof,

on any ground in any further proceeding of this action (including the trial of this action) and in

any other action;

4

3.    The right to object on any ground at any time to a demand or a request for further response (including further production of documents) to Robert Evans' Interrogatories or any other document requests or other discovery proceedings involving or relating to the subject matter of this controversy;

4.    The right at any time to revise, correct, add to, supplement or clarify any of the responses contained herein;

5.    In the event any documents that fall within the attorney-client privilege and/or attorney-work product doctrine, self-critical analysis or subsequent remedial action privilege, or any other privilege, are inadvertently produced by WS+B, WS+B shall not be deemed to have waived any of its privileges or protections as to any such document or the information contained therein, or its right to make claim of such privilege as to any other matter which arises during the course of this litigation or any subsequent or other proceeding; and

6.    Furthermore, to the extent that the Interrogatories seek the disclosure of proprietary and confidential information which, if disseminated, could or would impair or invade the legitimate and/or commercial interest of WS+B and/or rights of privacy of individuals, WS+B reserves the right to seek an appropriate protective order restricting the dissemination of such information either through agreement among counsel herein or by way of application to the Court. The specific responses to Interrogatories set forth below shall, therefore, not be deemed to constitute any waiver or limitation of WS+B's right to obtain a protective order governing its production of documents herein.

## RESPONSES TO
## INTERROGATORIES

1.      Identify all persons who have or may have knowledge of any facts relevant to the subject matter of this litigation and describe, in detail and not in summary fashion, the facts known to each, as well as the relationship or connection of each said person with any party to this litigation.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, compound, ambiguous, calls for speculation, and may seek information protected by the attorney-client privilege and work product doctrine. Notwithstanding and without waiving said objections, WS+B refers propounding party to the persons listed in WS+B's Rule 26 Initial Disclosures, WS+B's response to interrogatory number 1 of Third Party Defendants Omni Asset Management, LLC and Avery Eisenreich's First Set of Interrogatories to WS+B and persons identified in documents produced in discovery in this and related matters and in responses to interrogatories. WS+B reserves the right to supplement this response.**

2.      Identify in detail all admissions you contend have been made by any of the parties to this litigation, including, but not limited to Evans and Carrie Evans. A complete answer should include, but not be limited to, the substance of each such admission, the identity of the person who made each such admission, the date each such admission was made, the identity of any individuals with knowledge of the admission, and you should produce with your answer to this Interrogatory copies of all documents that relate or refer to such admissions in your possession, custody or control.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, compound, calls for information protected by the attorney-client privilege and/or work product doctrine, is premature and calls for a legal conclusion. WS+B further objects to the mischaracterization of Carrie Evans as a party to this litigation. Subject to continuing investigation, notwithstanding and without waiving said objections, WS+B identifies the following admissions:**

    (a) **Robert Evans', Heather Aaron's and Paul Mohrle's admission that pledges receivable was $6,216,810 and was collectible at December 31, 2005. See WSB-001300 to WSB-001305.**

    (b) **Robert Evans' letter of October 21, 2005 in which it was written that the $5 million pledge made by Omni Asset Management, LLC to BMC was not legally binding if Omni's financial situation changed. See WILEN_SUB_OMNI000136.**

6

(c) Avery Eisenreich's and Omni Asset Management, LLC's admission on October 21, 2005 wherein they make a $5 million pledge to Bayonne Medical Center Foundation payable in five annual installments with the first installment becoming due in June 2006. See WILEN_SUB_OMNI000137.

(d) Avery Eisenreich's and Omni Asset Management, LLC's execution on March 17, 2006 of a confirmation that Omni Asset Management LLC made a $5 million pledge to BMC on October 21, 2005, that was unrestricted and payable in five annual installments of $1 million with the first installment becoming due in June 2006. See WSB-000891 to WSB-000892.

(e) Herman Brockman's testimony that Robert Evans told Mr. Brockman sometime in 2005 that "Omni" made a $5 million pledge. See Herman Brockman, deposition transcript dated February 27, 2009, pages 62 -63.

(f) Avery Eisenreich's certified statement on or about December 8, 2006 that because BMC reneged on a certain lease, the $5 million pledge would not be funded. See Defendants' Objections and Answers to Plaintiffs' First Set of Interrogatories dated November 17, 2009 and served in adversary proceeding no. 09-1689-MS.

(g) Robert Evans' certified statement that BMC was fiscally sound, clinically advanced, and remained in full bond compliance as of July 14, 2006. See WILEN_SUP00000439 to 00000447.

WS+B reserves the right to rely upon any other admissions of any party to this lawsuit made in any document produced in discovery by WS+B or any other party and any statement made during any deposition taken in this or any adversary proceeding previously or hereafter instituted by plaintiff. WS+B reserves the right to supplement this response.

3.      Set forth in detail the procedures followed by Withum in gathering information and preparing the Auditor's Report, including but not limited to, the industry standards that were followed, a list of all persons that Withum requested documents from, a list of all documents reviewed, a list of all confirmation letters that Withum sent and the responses thereto, Internet searches, and all interviews, whether formal or informal, that Withum had with members of BMC, including, but not limited to, the BMC Board, any employee, executive, representative of agent acting on behalf of BMC, relating to the 2005 Financial Statements and preparation of the Auditor's Report. In addition, you should produce copies of all documents that relate or refer to your answer that are in your possession, custody or control.

RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, ambiguous, and compound. Notwithstanding and without waiving said objections, WS+B conducted an audit of the 2005 financial statements of BMC in accordance with auditing standards generally

accepted in the United State of America.   WS+B requested documents and
representations from, among others, representatives of BMC including Robert Evans,
Heather Aaron, Paul Mohrle, Carrie Evans, James Alund, Eugene Greenan, Vincent
Lombardo, and Al Vigliano.   See also documents previously produced Bates stamped
WSB-000001 through WSB-007745.

For pledge confirmation letters, please see documents Bates stamped WSB-
000799-000800, WSB-000891-000892, WSB-000896-000905, WSB-000912-000913, and
WSB-002946 to WSB-002947.   Other confirmation letters sent in connection with
WS+B's audit of BMC's 2005 financial statements include, but are not limited to, those
confirmations listed on documents Bates stamped WSB-000125 and WSB-001393.  See
also documents Bates stamped WSB-000552-000553, WSB-001311-001315, WSB-
001317-001320, and WSB-001321-001323.

WS+B reserves the right to supplement this response.

4.    Set forth in the detail the substance of all communications and/or
correspondence exchanged between Withum, or anyone acting on behalf of Withum, and
Aaron, or anyone acting on Aaron's behalf, relating to the Omni Pledge or confirmation of
the Omni Pledge. A complete answer should include, but not be limited to, the date of each
such communication, the method of each such communication (i.e., telephonic, e-mail, in-
person), all parties to the communication, the substance of each such communication,
identification of all persons with knowledge of each such communication, and produce with
your answer copies of all documents that refer or relate to each such communication.

RESPONSE:   WS+B specifically objects to this Interrogatory on the grounds
that it is overly broad and unduly burdensome.  Notwithstanding and without waiving
said objections, the following communications and/or correspondence were exchanged
between WS+B and Heather Aaron relating to the Omni Pledge or confirmation of the
Omni Pledge:

(a) In or around February 3, 2006, William Oster of WS+B discussed the Omni
Pledge with Heather Aaron.  See WSB-001306.

(b) In or around February 2006, in connection with WS+B's audit of BMC's
2005 financial statements, William Oster communicated with Heather Aaron and/or
Paul Mohrle regarding the pledge confirmation letter that would be sent to Omni Asset
Management, LLC to confirm the $5 million pledge made by Omni Asset Management.
Aaron signed the pledge confirmation letter on behalf of BMC, and the pledge
confirmation letter was returned to Oster by Mohrle.

(c) Robert Evans, Heather Aaron and Paul Mohrle represented to WS+B in or
around April 2006 , among other things, that pledges receivable were $6,216,810 and

8

such amount was collectible at December 31, 2005. See Management Representation Letter, WSB-001300 to WSB-001305.

WS+B reserves the right to supplement this response.

5.    Set forth in the detail the substance of all communications and/or correspondence exchanged between Withum, or anyone acting on behalf of Withum, and Mohrle relating to the Omni Pledge or confirmation of the Omni Pledge. A complete answer should include, but not be limited to, the date of each such communication, the method of each such communication (i.e., telephonic, e-mail, in-person), all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all documents that refer or relate to each such communication.

RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Notwithstanding and without waiving said objections, the following communications and/or correspondence were exchanged between WS+B and Mohrle relating to the Omni Pledge or confirmation of the Omni Pledge:

(a) In or around February 3, 2006, William Oster of WS+B discussed the Omni Pledge with Paul Mohrle. See WSB-001306.

(b) During 2006, William Oster requested a copy of the Omni Asset Management pledge document from Paul Mohrle on more than one occasion.

(c) In or around February 2006, in connection with WS+B's audit of BMC's 2005 financial statements, William Oster communicated with Heather Aaron and/or Paul Mohrle regarding the pledge confirmation letter that would be sent to Omni Asset Management, LLC to confirm the $5 million pledge made by Omni Asset Management. Mohrle returned the pledge confirmation letter signed by Aaron to Oster.

(d) Additionally, William Oster spoke with Paul Mohrle about why the pledge from Omni Asset Management was recorded in the hospital's financial records and not in the Foundation's financial records. Mohrle represented that the donor directed that the funds be given directly to the hospital.

(e) Robert Evans, Heather Aaron, and Paul Mohrle represented to WS+B in or around April 2006, among other things, that pledges receivable were $6,216,810 and such amount was collectible at December 31, 2005. See Management Representation Letter, WSB-001300 to WSB-001305.

(f) In or about early November 2006, William Oster had a phone conference with Paul Mohrle during which Mohrle orally informed Oster that the $5 million

9

pledge from Omni Asset Management, LLC that was recorded by BMC's management in the books and accounts of BMC in 2005 was uncollectible.

(g) On or about December 13, 2006 Paul Mohrle, James Hannan, Scott Mariani, and William Oster had a phone conference in connection with an audit of BMC's 2006 financial statements that was under consideration. During that phone call, Mohrle reiterated that the pledge was not collectible.

(h) In February 2007, James Hannan, William Oster, Paul Mohrle and Eugene Greenan had a meeting at BMC to prepare for the commencement of WS+B's field work for the audit of BMC's 2006 financial statements, during which it was discussed that the $5 million pledge from Omni Asset Management, LLC was uncollectible.

WS+B reserves the right to supplement this response.

6.    Set forth in the detail the substance of all communications and/or correspondence exchanged between Withum, or anyone acting on behalf of Withum, and Evans relating to the Omni Pledge or confirmation of the Omni Pledge. A complete answer should include, but not be limited to, the date of each such communication, the method of each such communication (i.e., telephonic, e-mail, in-person), all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all documents that refer or relate to each such communication.

RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Notwithstanding and without waiving said objections, the following communications and/or correspondence were exchanged between WS+B and Robert Evans relating to the Omni Pledge or confirmation of the Omni Pledge:

(a) In or around February 3, 2006, William Oster of WS+B discussed the Omni Pledge with Robert Evans. See WSB-001306.

(b) Robert Evans, Heather Aaron, and Paul Mohrle represented to WS+B in or around April 2006, among other things, that pledges receivable were $6,216,810 and such amount was collectible at December 31, 2005. See Management Representation Letter, WSB-001300 to WSB-001305.

(c) During the audit of BMC's 2005 financial statements, William Oster had several conversations with Robert Evans concerning the status of the audit and the audit procedures utilized by WS+B. During one of these conversations, Oster notified Evans that WS+B had requested a copy of the pledge document and would be confirming with Omni Asset Management the terms of the Omni Pledge.

WS+B reserves the right to supplement this response.

10

7.    Set forth in the detail the substance of all communications and/or correspondence exchanged between Withum, or anyone acting on behalf of Withum, and Carrie Evans relating to the Omni Pledge or confirmation of the Omni Pledge. A complete answer should include, but not be limited to, the date of each such communication, the method of each such communication (i.e., telephonic, e-mail, in-person), all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all documents that refer or relate to each such communication.

**RESPONSE:** WS+B specifically objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Notwithstanding and without waiving said objections, none.

8.    Set forth in the detail the substance of all communications and/or correspondence exchanged between Withum, or anyone acting on behalf of Withum, and members, executives of agents of BMC <u>other than Aaron, Mohrle, Evans and Carrie Evans</u> relating to the Omni Pledge or confirmation of the Omni Pledge. A complete answer should include, but not be limited to, the date of each such communication, the method of each such communication (i.e., telephonic, e-mail, in-person), all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all documents that refer or relate to each such communication.

**RESPONSE:** WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and ambiguous. Notwithstanding and without waiving said objections, the following communications and/or correspondence were exchanged between WS+B and other individuals employed by BMC:

(a) On or about December 22, 2006 William Oster spoke with Eugene Greenan, at which time Mr. Greenan made statements regarding the Omni Pledge. See WSB-007910-11.

(b) In or around January 2007, James Hannan, Scott Mariani and William Oster participated via telephone in a meeting of BMC's Audit and Compliance Committee during which the Omni Pledge was discussed.

(c) In February 2007, James Hannan, William Oster, Paul Mohrle and Eugene Greenan had a meeting at BMC to prepare for the commencement of WS+B's field work for the audit of BMC's 2006 financial statements, during which it was discussed that the Omni Pledge was uncollectible.

(d) Upon information and belief, James Alund may have been present during some of the communications between WS+B and Paul Mohrle set forth in response to Interrogatory 5.

WS+B reserves the right to supplement this response.

9.    Set forth in the detail the substance of all communications and/or correspondence exchanged between Withum, or anyone acting on behalf of Withum, and Omni and/or Eisenreich, or persons acting on their behalf, relating to the Omni Pledge or confirmation of the Omni Pledge. A complete answer should include, but not be limited to, the date of each such communication, the method of each such communication (i.e., telephonic, e-mail, in-person), all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all documents that refer or relate to each such communication.

**RESPONSE:  WS+B specifically objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Notwithstanding and without waiving said objections, on February 6, 2006, WS+B mailed the pledge confirmation letter to Omni Asset Management with a self-addressed envelope in which Omni Asset Management could mail its response.  See WSB-002946 to WSB-002947.  On or about March 17, 2006, WS+B received from Omni Asset Management the pledge confirmation letter that had been executed by Avery Eisenreich.  See WSB-000891 to WSB-000892.**

10.    Set forth in detail all communications and/or correspondence exchanged between Withum, or anyone acting on behalf of Withum, relating to the Omni Promissory Note, and any of the following: Evans, Carries Evans, Brockman, Apsel, Giblin, Kisberg, Grywalski, Aaron, Mohrle, Lindabury, members of the BMC Board, any employee, executive, representative of agent acting on behalf of BMC. A complete answer should include, but not be limited to, the substance of each such communication or correspondence, the identities of the persons who were parties to each such communication or correspondence, the date of each such communication or correspondence, the identity of any individuals with knowledge of the communication or correspondence, and you should produce with your answer to this Interrogatory copies of all documents that relate or refer to such communications or correspondence in your possession, custody or control.

**RESPONSE:  WS+B specifically objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Notwithstanding and without waiving said objections, none.**

11.    Set forth with specificity what information was provided to Withum by Evans that Withum relied upon in connection with its review of the 2005 Financial Statement and preparation of the Auditor's Report. A complete answer should include, but not be limited to, the substance of each such document, communication or correspondence, the identities of the persons who were parties to or received each such document, communication or correspondence, the date of each such document, communication or correspondence, the identity of any individuals with knowledge of the document, communication or correspondence, and you should produce with your answer to this Interrogatory copies of all documents that relate or refer to your answer.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, ambiguous, and compound. Notwithstanding and without waiving said objections, WS+B incorporates its prior responses and states that as president and chief executive officer of BMC, Robert Evans had overall responsibility for the operations and financial reporting processes of BMC and the acts of those under his supervision and direction. WS+B obtained information from a number of such persons during the audit. Further, Evans reviewed and signed the Management Representation letter that was given to WS+B, which stated, among other things, that Evans had made available to WS+B all financial records and related data and that he had no knowledge of any fraud or suspected fraud affecting BMC. See Management Representation Letter, WSB-001300 to WSB-001305. Further, William Oster had several conversations with Robert Evans during the audit, during which Robert Evans confirmed that there was no fraud at the hospital or any other problems with hospital operations. See WSB-001306.**

12.    Set forth with specificity what information was provided to Withum by Carrie Evans that Withum relied upon in connection with its review of the 2005 Financial Statement and preparation of the Auditor's Report. A complete answer should include, but not be limited to, the substance of each such document, communication or correspondence, the identities of the persons who were parties to or received each such document, communication or correspondence, the date of each such document, communication or correspondence, the identity of any individuals with knowledge of the document, communication or correspondence, and you should produce with your answer to this Interrogatory copies of all documents that relate or refer to your answer.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, ambiguous, and compound. Notwithstanding and without waiving said objections, during the 2005 audit, WS+B interviewed Carrie Evans in regard to the accounts receivable transaction cycle. See documents Bates stamped WSB-002162 through WSB-002164. Ms. Evans represented in detail how billing transactions were initiated, how collections were applied, the process for writing off bad debts, and the follow up performed by collection staff. Ms. Evans also represented that that the increase in accounts receivable from 2004 to 2005 was due to issues in the billing department, sickness, coding issues, and staffing issues, but that all of the issues had been resolved and an increase in cash flow and a reduction**

13

in the aging of accounts receivable was anticipated in mid-2006. See documents Bates stamped WSB-000832 and WSB-000846.

13.     Set forth in detail the substance of all communications and/or correspondence between Withum, or anyone acting on behalf of Withum, and Evans, or anyone acting on his behalf, relating to 2005 Financial Statements, including, but not limited to the Omni Pledge and the enforceability or unenforceability of the Omni Pledge, the Omni Promissory Note, the outlier claims, BMC's bond covenants, the Omni Letter, the St. Vincent's transaction and/or BMC's accounts receivable. A complete answer should include, but not be limited to, the substance of each such communication or correspondence, the identities of the persons who were parties to each such communication or correspondence, the date of each such communication or correspondence, the identity of any individuals with knowledge of the factual basis, communication or correspondence, and you should produce copies of all documents that relate or refer to your answer to this Interrogatory that are in your possession, custody or control.

        **RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, ambiguous, compound, and redundant. Notwithstanding and without waiving said objections, WS+B incorporates its previous responses and states that for communications between WS+B and Robert Evans regarding the Omni Pledge and the Omni Promissory Note, see WS+B's responses to Interrogatory numbers 6 and 10. There were no communications between WS+B and Robert Evans regarding the outlier claims, BMC's bond covenants, the Omni Letter or the St. Vincent's transaction. With respect to BMC's accounts receivable, Evans reviewed and signed the Management Representation letter supporting the valuation of the December 31, 2005 balances. See Management Representation Letter, WSB-001300 to WSB-001305.**

        **WS+B reserves the right to supplement this response.**

14.     Set forth in detail the substance of all communications and/or correspondence between Withum, or anyone acting on behalf of Withum, and Carrie Evans, or anyone acting on her behalf, relating to 2005 Financial Statements, including, but not limited to the Omni Pledge and the enforceability or unenforceability of the Omni Pledge, the Omni Promissory Note, the outlier claims, BMC's bond covenants, the Omni Letter, the St. Vincent's transaction and/or BMC's accounts receivable. A complete answer should include, but not be limited to, the substance of each such communication or correspondence, the identities of the persons who were parties to each such communication or correspondence, the date of each such communication or correspondence, the identity of any individuals with knowledge of the factual basis, communication or correspondence, and you should produce copies of all documents that relate or refer to your answer to this Interrogatory that are in your possession, custody or control.

        **RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, ambiguous, compound, and redundant.**

14

Notwithstanding and without waiving said objections, there were no communications between WS+B and Carrie Evans regarding the Omni Pledge, the Omni Promissory Note, the outlier claims, BMC's bond covenants, the Omni Letter, or St. Vincent's transaction. For communications between WS+B and Carrie Evans regarding BMC's accounts receivable, see WS+B's response to Interrogatory number 12.

15.    Set forth in detail when and the circumstances under which Withum learned that the Omni Pledge was "uncollectible." A complete answer should include, but not be limited to, the date of each such communication where Withum learned of this fact, the method of each such communication, all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all documents that refer or relate to each such communication or document that relates to your answer.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, ambiguous, compound, and redundant. Notwithstanding and without waiving said objections, see WS+B's responses to Interrogatory numbers 5 and 8.**

16.    Set forth in detail what steps, if any, Withum took to correct the fact that the Omni Pledge had previously been reported as collectible in the Auditor's Report. A complete answer should include, but not be limited to, the actions taken by Withum regarding the reporting of Omni Pledge after the issuance of the Auditor's Report, whether a bad debt reserve was established, and you should produce with your answer copies of all documents that support, refer or relate to your answer.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is vague, compound, and the term "correct" is undefined, ambiguous, and improper. Notwithstanding and without waiving said objections, BMC's management did not advise WS+B of a restatement of BMC's 2005 financial statements and was not asked to opine on restated financial statements.**

17.    Set forth in detail all communications between Withum, or anyone acting on its behalf, and BMC, or anyone acting on its behalf, that related to the establishing of a bad debt reserve in connection with the 2005 Financial Statements and/or Auditor's Report. A complete answer should include, but not be limited to, the amount of the reserve, how the amount was calculated, for which "bad debts" the reserve was established, the date of each such communication, the method of each such communication, all parties to the communication, the substance of each such communication, identification of all persons with knowledge of each such communication, and produce with your answer copies of all

15

documents that refer or relate to each such communication or document that relates to your answer.

RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overbroad, compound, ambiguous, violates the number limitation imposed by Fed. R. Civ. P. 33 and made applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7033, and the term "bad debt reserve" is undefined and ambiguous. Notwithstanding and without waiving said objections, during the 2005 audit, WS+B asked management about the collectability of patient accounts receivable, allowance calculations, the reserve for bad debts and bad debt write offs. Such discussions included WS+B discussing BMC's medical billing procedures with Carrie Evans. Ms. Evans represented the following: Patient accounts receivable are assigned a financial class based upon the patient's insurance information. Management then summarizes billed accounts receivable by financial class and calculates contractual allowances based on historical collection percentages. The hospital also records information related to patients that have been discharged but not billed for certain reasons. This information is identified in the system as "Discharged Not Final Billed" (DNFB). An overall allowance is manually determined for the DNFB accounts at the end of each month, and a detailed schedule of the allowance calculations is prepared by financial class based on historical collection percentages. This schedule would be evaluated periodically by Alfred Vigliano and Paul Mohrle to ensure that reasonable allowances were established.

In connection with the 2005 audit, WS+B also obtained an aging report that Paul Mohrle represented was sorted by financial class. WS+B reviewed and relied on the report for payors with significant balances, as well as any credit balances. WS+B also requested and obtained the schedule used by the Finance Department to determine the allowance for bad debts, and WS+B traced amounts from the allowance schedule to the aging report. WS+B evaluated the allowance methodology, including the consistency from year to year applied in the reserve calculation. WS+B discussed with Paul Mohrle the methodology used and the appropriateness of the account balance as it related to the net patient accounts receivable balance at year end and collectability of patient accounts receivable. Mohrle was asked about the change in the reserve account, which also impacted the bad debt expense. Further, WS+B selected a sample of patient charges that was representative of the population as it relates to inpatient and outpatient charges. Because Carrie Evans and Paul Mohrle represented that payor mixes had not changed significantly, the financial class selection used by WS+B was based on the percentage of financial class to the total patient accounts receivable used in the prior year.

18.    Set forth in detail all communications and/or correspondence relating to the outlier claims that was exchanged between Withum, or anyone acting on behalf of Withum, and any of the following: Evans, Carries [sic] Evans, Brockman, Apsel, Giblin, Kisberg, Grywalski, Aaron, Mohrle, Lindabury, members of the BMC Board, any employee, executive, representative of agent acting on behalf of BMC. A complete answer should

16

include, but not be limited to, the substance of each such communication or correspondence, the identities of the persons who were parties to each such communication or correspondence, the date of each such communication or correspondence, the identity of any individuals with knowledge of the communication or correspondence, and you should produce with your answer to this Interrogatory copies of all documents that relate or refer to such communications or correspondence in your possession, custody or control.

**RESPONSE:**  **WS+B specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, redundant, and compound. Notwithstanding and without waiving said objections, WS+B learned generally in or about January or February 2007 from Eugene Greenan and Paul Mohrle, that BMC was in discussions with the OIG regarding outlier billing issues.**

19.    Set forth in detail all communications and/or correspondence relating to the St. Vincent's transaction that was exchanged between Withum, or anyone acting on behalf of Withum, and any of the following: Evans, Carries [sic] Evans, Brockman, Apsel, Giblin, Kisberg, Grywalski, Aaron, Mohrle, Lindabury, members of the BMC Board, any employee, executive, representative of agent acting on behalf of BMC. A complete answer should include, but not be limited to, the substance of each such communication or correspondence, the identities of the persons who were parties to each such communication or correspondence, the date of each such communication or correspondence, the identity of any individuals with knowledge of the communication or correspondence, and you should produce with your answer to this Interrogatory copies of all documents that relate or refer to such communications or correspondence in your possession, custody or control.

**RESPONSE:**  **WS+B specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, redundant, compound, and unlimited in time. Notwithstanding and without waiving said objections, during WS+B's fieldwork for the 2005 audit, Heather Aaron mentioned to William Oster that BMC was pursuing the acquisition of St. Vincent's Medical Center in Staten Island, and that the process and due diligence period would be long.**

**On or about October 25, 2006, William Oster had a phone conversation with Paul Mohrle of BMC in connection with an audit of BMC's 2006 financial statements that was under consideration. During that phone call, Paul Mohrle stated that the St. Vincent's transaction would be completed by December 31, 2010. See document Bates stamped WSB-007530.**

**In or around March 2007, Lisa Galinsky of WS+B had a conversation with Robert Auriemma of BMC, during which Robert Auriemma represented that the amount of the St. Vincent's receivable was significantly overstated and that the account was reduced by $8 million before WS+B commenced field work for an audit of BMC's financial statements for the year ended December 31, 2006. See documents Bates stamped WSB-008344 to 008345.**

17

In or around January 2007, James Hannan, Scott Mariani and William Oster participated via telephone in a meeting of BMC's Audit and Compliance Committee during which the St. Vincent's transaction was discussed.

WS+B reserves the right to supplement this response.

20.     Set forth in detail each and every factual basis, including identifying all documents, correspondence and communications, that support the allegations in paragraph 13 of the First Count of Withum's Third Party Complaint/Crossclaim as they relate to Evans, that allege: "if BMC's financial statements did not fairly represent BMC's financial condition . . . this resulted from the negligence, fraud or other wrongful conduct by BMC's management, including . . . Evans, who [was] responsible for the preparation of and oversaw the preparation of financial statements and who concealed from WS+B that the financial statements were false and misleading or otherwise inaccurate."

RESPONSE:  WS+B specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, premature because WS+B is still investigating the facts and circumstances of the matter, including the allegations in WS+B's Third Party Complaint, and calls for a legal conclusion or expert opinion. Notwithstanding and without waiving said objections, WS+B incorporates its previous responses and states that WS+B is presently aware that Robert Evans wrote and/or signed a letter dated October 21, 2005 to Avery Eisenreich in which he stated the following:  "While Bayonne Medical Center regards a pledge as a promise, it is not legally binding...." (see WILEN_SUB_OMNI000136), which letter was not provided to WS+B and about which letter or its contents or existence WS+B was never told.  As part of WS+B's audit of BMC's 2005 financial statements, WS+B sent a pledge confirmation letter to Omni Asset Management to confirm that Omni Asset Management made a pledge of $5,000,000.00 to BMC, that the pledge would be paid in five annual installments of $1,000,000.00 with the first payment due on June 1, 2006, and that the pledge was unrestricted.  On or about March 17, 2006, WS+B received from Omni Asset Management the pledge confirmation letter executed by Avery Eisenreich.  See WSB-000891 to WSB-000892.   Avery Eisenreich did not note any exceptions, contingencies or conditions to the terms of the pledge set forth in the confirmation letter.

Further, Robert Evans was responsible for confirming various audit items in the management representation letter.  Although Robert Evans knew that he told Avery Eisenreich that the pledge was not legally binding, Robert Evans nevertheless represented to WS+B that "pledges receivable, net of allowance for uncollectible pledges, of $6,216,810 are deemed collectible as of December 31, 2005."  See WSB-001300 to WSB-001305.  As a result, the audited financial statements showed pledges receivable of $6,216,810.

WS+B reserves the right to supplement this response.

18

21.    Explain, in detail, how Withum would have amended the Auditor's Report, if at all, based upon information now known to Withum, and what impact, *if any*, such amendments would have to the bottom line analysis and calculations contained in the Auditor's Report.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it calls for impermissible speculation, is premature, seeks information that may be protected by the attorney-client privilege or work product doctrine, and calls for a response that is properly the subject of expert testimony.**

**WS+B reserves the right to supplement this response.**

22.    Set forth in detail what impact, if any, it would have had on the preparation of and calculations and analyses contained in the Auditor's Report, if Withum had known about the Omni Letter prior to preparing the Auditor's Report.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it calls for impermissible speculation, is premature, seeks information that may be protected by the attorney-client privilege or work product doctrine, and calls for a response that is properly the subject of expert testimony.**

**WS+B reserves the right to supplement this response.**

23.    Set forth in detail what impact, if any, it would have had on the preparation of and calculations and analyses contained in the Auditor's Report, if Withum had known about the outlier claims.

**RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it calls for impermissible speculation, is premature, seeks information that may be protected by the attorney-client privilege or work product doctrine, and calls for a response that is properly the subject of expert testimony.**

**WS+B reserves the right to supplement this response.**

24.    Set forth in detail what impact, if any, it would have had on the bottom-line calculations and analyses contained in the Auditor's Report, if the Omni Pledge had been

19

recorded as contingent.

RESPONSE:  WS+B specifically objects to this Interrogatory on the grounds that it calls for impermissible speculation, is vague, is premature, seeks information that may be protected by the attorney-client privilege or work product doctrine, and calls for a response that is properly the subject of expert testimony.

WS+B reserves the right to supplement this response.

## CERTIFICATION

I hereby certify that the foregoing statements made in the responses to Interrogatories

are true and correct to the best of my knowledge and belief. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

By: _____

James J. Hannan

For WithumSmith+Brown, P.C.

Dated: May 25, 2010

::ODMA\PCDOCS\ghcdocs\733073\1

21

COPY

**GIORDANO, HALLERAN & CIESLA, P.C.**
Mail to: P.O. Box 190, Middletown, N.J. 07748
Deliver to: 125 Half Mile Road, Suite 300, Red Bank, N.J. 07701
(732) 741-3900
Attorneys for Defendant WithumSmith+Brown, P.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Prepared by:
Donald F. Campbell, Jr. (DC8924)

**GIORDANO, HALLERAN &
CIESLA, P.C.**
P.O. Box 190, Middletown, N.J. 07748
(732) 741-3900

**GARRETT & TULLY**
4165 East Thousand Oaks Boulevard
Suite 201
Westlake Village, California  91362
(805) 446-4141

Attorneys for WithumSmith+Brown, PC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re | Chapter 11 |
| BAYONNE MEDICAL CENTER,<br>Debtor. | Case No.   07-15195 (MS) |
| ALLEN D. WILEN, in his official capacity<br>as Estate Representative and Liquidating<br>Trustee, | |
| | Adv. No. 09-1688 (MS) |
| Plaintiff,<br>v. | Judge: Hon. Morris Stern, U.S.B.J. |
| ROBERT H. EVANS, HERMAN<br>BROCKMAN, THEODORE GARELICK,<br>WILLIAM J. CAMPBELL, ROBERT C.<br>MILL, WILLIAM J. FINNERTY,<br>HOWARD LEVINE, ANTHONY WARD, | |

DEBORAH WOZNIAK, AND
WITHUMSMITH+BROWN, PC,

    Defendants,

WITHUMSMITH+BROWN, PC,

    Third Party Plaintiff,

v.

PAUL MOHRLE, HEATHER AARON,
OMNI ASSET MANAGEMENT LLC,
and AVERY EISENREICH,

    Third Party Defendants.

WITHUMSMITH+BROWN'S RESPONSES
TO THIRD-PARTY DEFENDANTS OMNI
ASSET MANAGEMENT, LLC AND AVERY
EISENREICH'S FIRST SET OF
INTERROGATORIES

**TO:**   Fred R. Gruen, Esq.
      Gruen & Goldstein, Esqs.
      1150 West Chestnut Street
      P.O. Box 1553
      Union, NJ  07083

      and

      Richard Honig, Esq.
      Richard K. Coplon, Esq.
      Hellring Lindeman Goldstein & Siegal LLP
      One Gateway Center
      Newark, NJ 07108

**PLEASE TAKE NOTICE** that defendant WithumSmith+Brown ("WS+B") responds,

pursuant to the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure,

to third party defendants Omni Asset Management, LLC and Avery Eisenreich's ("Third Party

Defendants") first set of interrogatories.

2

## GENERAL OBJECTIONS

1. All responses are provided without admitting that they are relevant, material or admissible for purposes of the instant litigation. WS+B hereby reserves the right to object to the admissibility into evidence of any information provided in response to these Interrogatories on said grounds of relevancy, materiality or admissibility or any other applicable grounds.

2. WS+B objects to these Interrogatories to the extent that they seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

3. WS+B objects to these Interrogatories to the extent that they are vague and ambiguous.

4. WS+B objects to these Interrogatories to the extent that they are overly broad or unduly burdensome.

5. WS+B objects to these Interrogatories to the extent that they request information in the possession or control of Third Party Defendants or third parties. The scope of WS+B's responses will be limited to only that information within the possession, custody or control of WS+B.

6. WS+B objects to these Interrogatories to the extent that they seek information that is protected under the attorney-client privilege and/or work-product doctrine. Inadvertent production of any such information shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, nor shall such inadvertent production waive the right of WS+B to object to the use of any such information in any proceeding.

3

7. WS+B objects to these Interrogatories to the extent that they seek information and/or

documents prepared in anticipation of litigation and/or trial. Inadvertent production of any such

information shall not constitute a waiver of any privilege or any other ground for objecting to

discovery with respect to such information, nor shall such inadvertent production waive the right

of WS+B to object to the use of any such information in any proceeding.

8. WS+B objects to these Interrogatories to the extent that they seek documents that

disclose opinions, mental impressions, conclusions, strategies or legal theories of WS+B, its

counsel or other representatives. Inadvertent production of any such information shall not

constitute a waiver of any privilege or any other ground for objecting to discovery with respect to

such information, nor shall such inadvertent production waive the right of WS+B to object to the

use of any such information in any proceeding.

9. WS+B objects to these interrogatories in that they are an attempt to circumvent the

Federal Rules of Civil Procedure and Bankruptcy Procedure and require WS+B to respond to a

greater number of interrogatories than permitted pursuant to the Federal Rules of Civil Procedure

and Bankruptcy Procedure.

In addition, these responses are made without waiver of and with preservation of the

following:

1. All questions as to competency, relevancy, materiality, privilege and admissibility

of the responses and the subject matter thereof as evidence for any purpose in any further

proceeding in this action (including the trial of this action) and in any other action;

2. The right to object to the use of any such responses, or the subject matter thereof,

on any ground in any further proceeding of this action (including the trial of this action) and in

any other action;

4

3.    The right to object on any ground at any time to a demand or a request for further response (including further production of documents) to Third Party Defendants' Interrogatories or any other document requests or other discovery proceedings involving or relating to the subject matter of this controversy;

4.    The right at any time to revise, correct, add to, supplement or clarify any of the responses contained herein;

5.    In the event any documents that fall within the attorney-client privilege and/or attorney-work product doctrine, self-critical analysis or subsequent remedial action privilege, or any other privilege, are inadvertently produced by WS+B, WS+B shall not be deemed to have waived any of its privileges or protections as to any such document or the information contained therein, or its right to make claim of such privilege as to any other matter which arises during the course of this litigation or any subsequent or other proceeding; and

6.    Furthermore, to the extent that the Interrogatories seek the disclosure of proprietary and confidential information which, if disseminated, could or would impair or invade the legitimate and/or commercial interest of WS+B and/or rights of privacy of individuals, WS+B reserves the right to seek an appropriate protective order restricting the dissemination of such information either through agreement among counsel herein or by way of application to the Court. The specific responses to Interrogatories set forth below shall, therefore, not be deemed to constitute any waiver or limitation of WS+B's right to obtain a protective order governing its production of documents herein.

5

## RESPONSES TO
## INTERROGATORIES

1.    Set forth the names and addresses of each and every person you believe has relevant knowledge of the claims set forth in WithumSmith+Brown, PC's Third Party Complaint set forth below and provide a summary of what you believe to be each person's knowledge and how it was acquired, and annex copy of all documents that relate or pertain or are relevant to the said claims.

(a)   Second Count paragraphs 16-22
(b)   Third Count paragraph 24
(c)   Third Count paragraph 25
(d)   Third Count paragraph 26
(e)   Third Count paragraph 29
(f)   Third Count paragraph 30
(g)   Third Count paragraph 32
(h)   Third Count paragraph 33
(i)   Third Count paragraph 34
(j)   Third Count paragraph 35
(k)   Third Count paragraph 36
(l)   Third Count paragraph 37
(m)   Third Count paragraph 38

RESPONSE:  This interrogatory is specifically objected to on the grounds that it is overly broad, unduly burdensome, compound, ambiguous, calls for speculation, violates the number limitation imposed by Fed. R. Civ. P. 33 and made applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7033, and may seek information protected by the attorney-client privilege and work product doctrine.  This interrogatory is further improper to the extent it seeks information regarding allegations, rather than inquiring as to facts known to a party.  Notwithstanding and without waiving said objections, WS+B responds as follows to each of the subparts listed above.

(a) With respect to **paragraph 16** of WS+B's Third Party Complaint filed on November 20, 2009 (hereinafter the "Third Party Complaint"), which is a recitation of allegations made by the Plaintiff in the First Amended Adversary Complaint ("Adversary Complaint"), anyone with knowledge of the pleadings has relevant knowledge of the allegation having been made.

With respect to **paragraph 17** of the Third Party Complaint, WS+B believes the following people have relevant knowledge of the pledge having been confirmed by Omni

6

Asset Management to WS+B in a writing in March 2006:

> James Hannan, Partner
> WithumSmith+Brown, P.C.
> 465 South Street, Suite 200
> Morristown, NJ 07960

> William Oster, Manager
> WithumSmith+Brown, P.C.
> 465 South Street, Suite 200
> Morristown, NJ 07960

See WSB-000891-000892.

WS+B believes that Avery Eisenreich, Omni Asset Management, LLC and Bayonne Healthcare Development, LLC, have knowledge of the pledges he or entities he controlled made, the confirmation of the pledge to WS+B, payment made and the positions taken by Avery Eisenreich, Omni Asset Management, LLC, and Bayonne Healthcare Development, LLC in this matter and in the matter of <u>Wilen v. Omni, et al.</u>, Adv. Pro. No. 09-1689.

WS+B believes that the following individuals have knowledge of the pledge, its confirmation and/or communications with Avery Eisenreich and/or other representatives of the entities controlled by Avery Eisenreich:

> Robert Evans, former President and Chief Executive Officer
> Bayonne Medical Center

> Heather Aaron, former Chief Financial Officer
> Bayonne Medical Center

> Paul Mohrle, former Director of Finance and Chief Financial Officer
> Bayonne Medical Center

> Carrie Evans, former Vice President of Administration
> Bayonne Medical Center

With respect to <u>paragraph 18</u> of the Third Party Complaint, which is a recitation of allegations made by the Plaintiff in the Adversary Complaint, anyone with knowledge of the pleadings has relevant knowledge of the allegations having been made.

WS+B believes that Avery Eisenreich, Robert Evans, Carrie Evans and other parties who have reviewed the pleadings in this matter have knowledge of the

egations set forth in paragraphs 19-21 of the Third Party Complaint. W  respect to
ragraph 20 of the Third Party Complaint, WS+B believes that James Hannan,
illiam Oster have relevant knowledge that WS+B was not informed of the letter from
obert Evans to Eisenreich referenced in these allegations.

(b) WS+B specifically objects to this Interrogatory because there is no paragraph
4 in the Third Count and because it is a contention interrogatory that is premature at
his point in the litigation and also references legal standards, not facts within the
knowledge of a party.

(c) WS+B specifically objects to this Interrogatory as it requires WS+B to
identify parties with knowledge of 24 paragraphs of the Third Party Complaint and
therefore it is overly broad, unduly burdensome and violates the number limitation
imposed by Fed. R. Civ. P. 33. Notwithstanding and without waiving said objections,
please see WS+B's responses to 1(a) and 1(b) above.

(d) With respect to paragraph 26 of the Third Party Complaint, WS+B believes
that James Hannan and William Oster have knowledge of the substance and fact of the
representations having been made and have knowledge of the representations made.
Robert Evans, Heather Aaron, Paul Mohrle and Carrie Evans have relevant knowledge
of the allegations set forth in the paragraph.

(e) With respect to paragraph 29 of the Third Party Complaint, WS+B believes
that James Hannan and William Oster have knowledge of WS+B's receipt of the
confirmation letter and its contents and that Robert Evans, Heather Aaron, Paul
Mohrle, Carrie Evans and Avery Eisenreich also have relevant knowledge of the
allegations set forth in the paragraph.

(f) See response to 1(e).

(g) With respect to the allegations set forth in paragraph 32 of the Third Party
Complaint WS+B, believes that Robert Evans, Avery Eisenreich and any other officers,
trustees, or employees of Bayonne Medical Center (hereinafter "BMC") who were
aware of the letter from Robert Evans to Avery Eisenreich stating that the pledge to
BMC was not legally binding has knowledge. James Hannan and William Oster also
have knowledge of not having been advised about Robert Evans' letter to Avery
Eisenreich.

(h) With respect to paragraph 33 of the Third Party Complaint, which is a
recitation of a party's position, WS+B believes that Avery Eisenreich and other parties
who have reviewed the pleadings and/or discovery responses in this matter have
knowledge of the allegations.

(i) WS+B specifically objects to this Interrogatory on the grounds that it is
premature.  Notwithstanding and without waiving said objection, with respect to
paragraph 34 of the Third Party Complaint, WS+B believes that Avery Eisenreich and

8

certain members of BMC's management or trustees, including, but not limited to, Robert Evans, Paul Mohrle, and Heather Aaron, have knowledge of the allegations.

(j) With respect to <u>paragraph 35</u> of the Third Party Complaint, WS+B specifically objects to this Interrogatory on the grounds that it is a contention interrogatory that is premature at this point in the litigation and because Third Party Defendants have full access to information about their own behavior. Notwithstanding and without waiving any objections, WS+B believes that Avery Eisenreich and other parties who have reviewed the pleadings in this matter have knowledge of the allegations set forth in the paragraph.

(k) With respect to <u>paragraph 36</u> of the Third Party Complaint, WS+B specifically objects to this Interrogatory on the grounds that it is premature and because the parties referenced have full knowledge of their own behavior. Notwithstanding and without waiving said objection, WS+B believes that Avery Eisenreich, Robert Evans, Heather Aaron, Paul Mohrle, and Carrie Evans have knowledge of the allegations set forth in the paragraph.

(l) See responses to prior interrogatories.

(m) With respect to <u>paragraph 38</u> of the Third Party Complaint, WS+B believes that James Hannan, Joseph Perez, Scott Mariani, William Oster, Avery Eisenreich, Robert Evans, Heather Aaron, Paul Mohrle, and Carrie Evans have knowledge of the allegations set forth in the paragraph.

WS+B reserves the right to supplement this response.

2.    Set forth all admissions or statements against interest you state were made by any parties to this action with respect to the Third Party Complaint, setting forth the time, place and manner of making of admission or statements; if written, annex a true copy hereto; if oral, set forth in detail the content of any such oral admission or statements.

RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, compound, calls for information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Subject to continuing investigation, notwithstanding and without waiving said objections, WS+B is aware of the following admissions and/or statements against interest that were made by parties to this action with respect to the Third Party Complaint:

(a) Robert Evans', Heather Aaron's and Paul Mohrle's admission that pledges receivable was $6,216,810 and was collectible at December 31, 2005. See WSB-001300 to WSB-001305.

9

(b) Robert Evans' letter of October 21, 2005 in which it was written that the $5 million pledge made by Omni Asset Management, LLC to BMC was not legally binding if Omni's financial situation changed. See WILEN_SUB_OMNI000136.

(c) Avery Eisenreich's and Omni Asset Management, LLC's admission on October 21, 2005 wherein they make a $5 million pledge to Bayonne Medical Center Foundation payable in five annual installments with the first installment becoming due in June 2006. See WILEN_SUB_OMNI000137.

(d) Avery Eisenreich's and Omni Asset Management, LLC's execution on March 17, 2006 of a confirmation that Omni Asset Management LLC made a $5 million pledge to BMC on October 21, 2005, that was unrestricted and payable in five annual installments of $1 million with the first installment becoming due in June 2006. See WSB-000891 to WSB-000892.

(e) Herman Brockman's testimony that Robert Evans told Mr. Brockman sometime in 2005 that "Omni" made a $5 million pledge. See Herman Brockman, deposition transcript dated February 27, 2009, pages 62 -63.

(f) Avery Eisenreich's certified statement on or about December 8, 2006 that because BMC reneged on a certain lease, the $5 million pledge would not be funded. See Defendants' Objections and Answers to Plaintiffs' First Set of Interrogatories dated November 17, 2009 and served in adversary proceeding no. 09-1689-MS.

WS+B reserves the right to rely upon any other declaration, statements against interest, or admissions of any party to this lawsuit made in any document produced in discovery by WS+B or any party and any statement made during any deposition taken in this or any adversary proceeding previously or heretofore instituted by plaintiff. WS+B reserves the right to supplement this response.

3.    Set forth all communications, oral or written, between Withumsmith+Brown, PC and any and all parties and other persons pertaining to the allegations of the Third Party Complaint, including the date each conversation occurred and name and address of participants and witnesses.

RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is compound, overly broad, ambiguous, and may seek information protected by the attorney-client privilege and work product doctrine. Notwithstanding and without waiving said objections, to the extent the inquiry seeks facts related to the allegations in the Third Party Complaint, WS+B presently is aware of the following communications:

(a) In or around February 3, 2006, William Oster of WS+B discussed the pledge with Heather Aaron, Paul Mohrle, and possibly Robert Evans. See WSB-001306.

(b) In or around February 2006, in connection with WS+B's audit of BMC's 2005 financial statements, WS+B communicated with Heather Aaron and/or Paul Mohrle regarding the pledge confirmation letter that would be sent to Omni Asset Management, LLC to confirm the $5 million pledge made by Omni Asset Management. Ms. Aaron signed the pledge confirmation letter on behalf of BMC, and WS+B mailed it to Omni Asset Management. See WSB-002946 to WSB-002947. On or about March 17, 2006, WS+B received from Omni Asset Management the pledge confirmation letter that had been executed by Avery Eisenreich. See WSB-000891 to WSB-000892.

(c) In connection with WS+B's audit of BMC's 2005 financial statements, Robert Evans, Heather Aaron and Paul Mohrle represented to WS+B in or around April 2006 that pledges receivable was $6,216,810 and such amount was collectible at December 31, 2005. See Management Representation Letter, WSB-001300 to WSB-001305.

(d) In or about early November 2006, William Oster had a phone conference with Paul Mohrle during which Paul Mohrle orally informed William Oster that the $5 million pledge from Omni Asset Management, LLC that was recorded by BMC's management in the books and accounts of BMC in 2005 was uncollectible.

(e) On or about December 13, 2006 Paul Mohrle, James Hannan, Scott Mariani, and William Oster had a phone conference in preparation for an audit of BMC's 2006 financial statements. During that phone call, Paul Mohrle reiterated that the pledge was not collectible.

(f) On or about December 22, 2006 William Oster spoke with Eugene Greenan, at which time Mr. Greenan made statements regarding the pledge. See WSB-007910-11.

(g) In or around January 2007, James Hannan, Scott Mariani and William Oster participated via telephone in a meeting of BMC's Audit and Compliance Committee during which the $5 million pledge from Omni Asset Management was discussed.

(h) In February 2007, James Hannan, William Oster, Paul Mohrle and Eugene Greenan had a meeting at BMC to prepare for the commencement of WS+B's field work for the audit of BMC's 2006 financial statements, during which they discussed that the $5 million pledge from Omni Asset Management, LLC was uncollectible.

WS+B reserves the right to supplement this response.

4.    Set forth all communications with parties and persons pertaining to the June 22, 2006 one million ($1,000,000) dollar Promissory Note of BMC in favor of ATE Consulting, Co., the $1 million loan to BMC from ATE Consulting Co., repayment of the loan, the deduction of the loan from the purchase price of the Bell Building deeded to Omni Bayonne Development LLC on December 8, 2006; including the date such communications occurred and names and addresses of participants and witnesses.

11

RESPONSE: WS+B is not aware of any such communications to which it was a party.


5.    Set forth all amounts and elements of damages sought from Third Party Defendants Omni Asset Management, LLC and Avery Eisenreich.


RESPONSE: WS+B specifically objects to this Interrogatory on the grounds that it is compound, ambiguous and seeks information that may be protected by the attorney-client privilege and work product doctrine.  Notwithstanding and without waiving said objections, WS+B's damages are unknown at this time because WS+B seeks damages based upon theories of indemnification, contribution, and apportionment of responsibility.

## CERTIFICATION

I hereby certify that the foregoing statements made in the responses to Interrogatories are true and correct to the best of my knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____

For WithumSmith+Brown, P.C.

Dated: March 31, 2010

::ODMA\PCDOCS\ghcdocs\723432\1

13

# Bayonne Medical Center

29th Street at Avenue E
Bayonne, New Jersey 07002

February 6, 2006

Mr. Avery Eisenreich
Omni Asset Management
26 Journal Square
16th Floor
Jersey City, New Jersey 07306

Dear Mr. Eisenreich:

Our auditors, WithumSmith&Brown, are conducting an audit of our financial statements. For the purpose of independent verification only, please confirm the following information relating to your Contribution and Promise to Give to Bayonne Medical Center as of December 31, 2005:

Date made:                                                           October 21, 2005

Amount:                                                              $ 5,000,000    E-13

Restrictions on period or manner of use:                             Unrestricted

Payable in the following installments:

June 1, 2006                                      $ 1,000,000

June 1, 2007                                      $ 1,000,000

June 1, 2008                                      $ 1,000,000

June 1, 2009                                      $ 1,000,000

June 1, 2010                                      $ 1,000,000

Please indicate in the space provided below whether the above is in agreement with your records. If it is not, please furnish our auditors with any information you may have that will help them reconcile the difference.

After signing and dating your reply, please mail it directly to WithumSmith&Brown, Attn. William Oster, 465 South Street, Suite 200, Morristown, NJ 07960 in the enclosed return envelope or email to boster@withum.com.

Very truly yours,

Heather Aaron
Chief Financial Officer /CFO
Bayonne Medical Center

www.bayonnemedicalcenter.org

WSB-000891

To: WithumSmith&Brown

The above information regarding the Contribution and Promise to Give made to Bayonne
Medical Center  agrees with my records at December 31, 2005 with the following exceptions (if
any):

_____

_____

_____

_____

Signature: _____

Title: _____

Date: _____ 3/17/06 _____

WSB-000892