# EXHIBIT #93

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11


COPY

In re BAYONNE MEDICAL CENTER,    :

        Debtor,    :

**ORIGINAL**

ALLEN D. WILEN,    :

                                  DEPOSITION OF:

        Plaintiff,    :

                                  HERMAN BROCKMAN

       -vs-    :

BAYONNE/OMNI DEVELOPMENT,    :
LLC, et al.,

                       :

        Defendants.
-----------------------------------

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of EDWARDS, ANGELL, PALMER &

DODGE, L.L.P., One Giralda Farms, Madison, New

Jersey, on MONDAY, MARCH 29, 2010, commencing at

12:28 p.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

1   A       Okay.

2       Q       Have you seen this document before

3   today?

4   A       It's a promissory note.  No.  Before today?

5       Q       Yes.

6   A       Yeah, I saw it, I believe, before the

7   closing, when he told me about the $1,000,000 note.

8       Q       Going back to your 2004 Examination.

9   A       What page?

10      Q       We'll start at Page 32, at Line 21.

11  I'll read it into the record, it's short.

12              "QUESTION:  Do you have a

13      recollection of discussing a promissory note

14      during that meeting?"

15  This is a referring to a meeting that you

16  had with Mr. Eisenreich.

17              "ANSWER:  It probably was, because

18      Mr. Eisenreich told me that he had lent the

19      hospital through Mr. Evans $1,000,000.

20              "QUESTION:  When did Mr. Eisenreich

21      tell you that?

22              "ANSWER:  A couple of days before the

23      closing.  I believe it was in the beginning

24      of December."  I'm continuing.

25              "QUESTION:  So sometime in early

```
 1        December it's your recollection that that's
 2        when Mr. Eisenreich advised you that he
 3        personally had loaned $1,000,000 to the
 4        hospital?
 5               "ANSWER:  I don't know if it was him
 6        personally or his corporation, I don't know
 7        it was.  He said that he lent $1,000,000 to
 8        the hospital.
 9               "QUESTION:  Is that the first that
10        you had ever learned that he had loaned
11        $1,000,000 to the hospital?
12               "ANSWER:  Yes.  In fact, I told him I
13        knew nothing about it.
14               "QUESTION:  What did he say in
15        response to that?
16               "ANSWER:  He said, 'You signed it.'
17        I said, 'I did not sign it.'"
18        Are those answers to those questions
19   accurate?
20   A      Yes.
21   Q      When he said, "You signed it," and
22   you said, "I did not sign it," is that when he
23   produced a copy of the note, which you testified to
24   earlier?
25   A      I believe so.
```

```
 1    Uniform Commercial Code, also known as UCC financing

 2    statement to sign in connection with the $1,000,000

 3    payment that the Omni entity made to the hospital?

 4    A    Not that I recall, no.

 5         Q    Did Carrie Evans ever tell you that

 6    she wanted you to sign a UCC financing statement for

 7    the hospital to secure the repayment of the

 8    $1,000,000 payment?

 9    A    No.

10         Q    Did anyone ever tell you that you

11    were being asked to sign a UCC financing statement

12    in order to secure the repayment of the $1,000,000

13    payment that the Eisenreich entity had made to the

14    hospital?

15    A    No.

16         Q    Did anyone ever tell you that Robert

17    Burney agreed in your absence to sign a UCC

18    financing statement to secure the repayment of the

19    $1,000,000 to the Eisenreich entity?

20    A    No.

21         Q    Right behind D-7 is D-8 in that

22    package of exhibits, a document entitled "Corporate

23    Resolution." Look at it, if you would, please.

24    A    Okay.

25         Q    Can you authenticate the signature of
```

Case 09-01689-MS   Doc 47-17   Filed 05/06/11   Entered 05/06/11 10:01:44   Desc
Exhibit #93 - #96   Page 6 of 20

1  Robert H. Evans on this document?

2  A  Yes.

3  Q  Is the signature that purports to be
4  that of Herman Brockman on this document genuine or
5  not?

6  A  No.

7  Q  Do you know who signed the name
8  Herman Brockman on this document?

9  A  No.

10 Q  Has anyone ever told you that they
11 know who signed the name Herman Brockman on this
12 document?

13 A  No.

14 Q  Do you suspect who signed the name
15 Herman Brockman on this document?

16 A  No.

17 Q  Has anyone ever told you that they
18 suspect who it was who signed your name on this
19 document?

20 A  No.

21 Q  Do you know when this document was
22 prepared?

23 A  No.

24 Q  Do you know who prepared it?

25 A  No.

# EXHIBIT #94

Page 230

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,    :

              Debtor,    :

BAYONNE MEDICAL CENTER,    :
Debtor and
Debtor-in-Possession; and    :
ALLEN D. WILEN, in his        DEPOSITION OF:
capacity as Liquidating    :
Trustee and Estate        CAROLINE EVANS
Representative for the Estate    :
of Debtor, Bayonne Medical        VOLUME II
Center,    :    (Pages 230-412)

              Plaintiff,    :

              -vs-    :

BAYONNE/OMNI DEVELOPMENT,    :
L.L.C., a New Jersey limited
liability company; et al.,    :

             Defendants.    :
------------------------------

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court

Reporter and Notary Public of the State of New

Jersey, at the offices of CONNELL FOLEY, L.L.P., 85

Livingston Avenue, Roseland, New Jersey, on TUESDAY,

JUNE 1, 2010, commencing at 9:27 a.m., pursuant to

Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

```
 1   it to you and ask you one or two questions about it.
 2   It begins June 23, 2006 at 11:59 a.m. from Connie
 3   Tauber. Do you know who Connie Tauber is?
 4        A.    She works for Omni.
 5        Q.    To Carrie Evans, and it says, "Is the
 6   account name Bayonne Medical Center?" Then on the
 7   same date at 12:10 Carrie Evans to Connie Tauber,
 8   "Yes, the account is Bayonne Medical Center. I
 9   mentioned to Avery that Mr. Brockman was not here on
10   Friday. I got his signature yesterday, and then he
11   left and then I got the correct UCC document. I can
12   have him sign on Monday or I can have Rob sign today
13   and fax it over now."
14        And the end of this e-mail chain is Avery to
15   Carrie, June 23 at 12:10 p.m., "No problem, have Rob
16   sign it. Thanks." And then it ends with Carrie
17   Evans to Avery, same date at 12:13 p.m., "Okay."
18        A.    Okay.
19        Q.    Have you seen that document?
20              MR. FALANGA: Object to the form.
21        A.    Yeah. I mean, I'm on it, so yes, I
22   probably have seen it before. But there's something
23   missing here between these two things (indicating).
24        Q.    I can only tell you this is the way I
25   received it. I can't improve upon it today.
```

1    A.    This is the end of the e-mail.

2          MR. SAMSON: The balance of the

3    e-mail from Angelo Elmo to Carrie Evans.

4          THE WITNESS: Who's Angelo Elmo?

5    Q.    I can't tell you. I'm just asking

6    you a question about that page.

7          MR. SAMSON: Just testify that you've

8    seen a portion of the document.

9    A.    I've seen a portion of the document,

10   yes.

11   Q.    And have you had a chance to read it?

12   A.    Hold on. Okay, I've read it.

13   Q.    Now, does that help refresh your

14   recollection that in June of '06 you communicated

15   with Avery to tell him that the promissory note had

16   been signed by Herman Brockman?

17   A.    Yes.

18         MR. FALANGA: Object to the form.

19   Q.    How did you know when you

20   communicated to Avery on June 23, '06 that Herman

21   Brockman had signed the note? How did you know at

22   that point that Herman Brockman had signed the

23   noted?

24         MR. FALANGA: Object to the form.

25   A.    I don't know exactly how I knew.

1  Either I had it or I was told he signed it, either
2  one of those.
3      Q.    Do you remember, and then I think I
4  can be done with it, do you remember that Avery or
5  Avery's office asked you for a UCC or a Uniform
6  Commercial Code document in connection with this
7  loan transaction?
8            MR. FALANGA:  Object to the form.
9      A.    As I said before, I remember they
10 asked for a document.  I didn't know what they were
11 referring to it as, but there was another document
12 involved.  I didn't know the name of it.
13           MR. GRUEN:  Mark this for me, please.
14           (E-mail chain, top one dated 6/22/06
15        from Connie Tauber to Carrie Evans, is
16        received and marked Carrie Evans-6 for
17        identification by the Reporter.)
18      Q.   This is a document dated June 22, '06
19 from Connie Tauber to Carrie Evans, "Subject:  Here
20 we go."  Text, "The UCC is under separate cover."
21 Can you identify this document?
22      A.   It's an e-mail from Connie to me, and
23 attached is a copy of the corporate resolution and a
24 copy of the promissory note.
25      Q.   Did you receive something called "the

# EXHIBIT #95

Page 230

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,       :

        Debtor,                    :

BAYONNE MEDICAL CENTER,             :
Debtor and
Debtor-in-Possession; and           :
ALLEN D. WILEN, in his                  DEPOSITION OF:
capacity as Liquidating             :
Trustee and Estate                      CAROLINE EVANS
Representative for the Estate       :
of Debtor, Bayonne Medical              VOLUME II
Center,                             :   (Pages 230-412)

        Plaintiff,                 :

        -vs-                       :

BAYONNE/OMNI DEVELOPMENT,           :
L.L.C., a New Jersey limited
liability company; et al.,          :

        Defendants.                :
----------------------------------

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court Reporter and Notary Public of the State of New Jersey, at the offices of CONNELL FOLEY, L.L.P., 85 Livingston Avenue, Roseland, New Jersey, on TUESDAY, JUNE 1, 2010, commencing at 9:27 a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

```
 1   Tauber was requiring a UCC as part of the loan
 2   transaction?
 3              MR. FALANGA: Object to the form.
 4        A.    At the time it was my understanding
 5   she needed that document back, yes.
 6        Q.    And that was the document that had
 7   been sent under cover of the e-mail of June 22 at
 8   4:41 p.m. that we marked as Exhibit 38; is that
 9   correct?
10              MR. FALANGA: Object to the form.
11        A.    Yes.
12        Q.    And then if you would jump to 17, BMC
13   17 in Exhibit 38, it purports to be an e-mail from
14   Connie Tauber to you. I ask you to identify it.
15        A.    It's from Connie to me dated
16   July 13th, and it says, "I never received the
17   original UCC signed. I really need an original.
18   Please arrange that it goes out overnight."
19        Q.    Do you remember receiving this
20   e-mail?
21        A.    Yes.
22        Q.    And what, if anything, did you do in
23   response to this e-mail?
24        A.    I don't remember that.
25        Q.    Do you know whether a signed UCC was
```

1   ever provided to or delivered to the Omni side?

2              MR. FALANGA:  Object to the form.

3         A.   Well, I know the document was signed,
4   yes.

5         Q.   The UCC was signed?

6         A.   Yes.

7         Q.   How do you know that the UCC was
8   signed?

9         A.   Because I know that Rob signed it.

10        Q.   And by "Rob" you mean Rob Burney?

11        A.   No, Rob Evans signed it.

12        Q.   I'm sorry.  Rob Evans signed the UCC
13  document in the same form as we saw attached at
14  Exhibit 38?

15        A.   That was the form that I was
16  referring to.

17        Q.   Do you know if that document was ever
18  delivered to Omni or Eisenreich or Connie?

19        A.   Absolutely?  I don't remember when it
20  was, but I think it was.

21        Q.   Look at the next page, which is BMC
22  Bates 20.  This purports to be a July 18th e-mail
23  from Connie to you.  Can you identify this?

24        A.   It says, "Enclosed please find an
25  original UCC.  Please have it signed and overnight

Page 269

```
 1    it back to me."
 2         Q.     Do you recall receiving this e-mail?
 3         A.     No, but I remember the discussions
 4    surrounding the document.
 5         Q.     Can you recall those for the record,
 6    please?
 7         A.     She needed these forms signed and
 8    then she needed the original, something with an
 9    original signature.
10         Q.     Had the form that Exhibit 38 suggests
11    that was sent to you on June 22 been misplaced and
12    that's why she was sending it again?
13         A.     I don't remember, Mr. Gruen.
14         Q.     And is it your testimony, then, that
15    you did have it signed and sent back to Connie?
16         A.     I do remember giving it to Susan, to
17    Rob's secretary, saying this is part of the
18    documents. I do, I do remember that.
19         Q.     And it was after that that Rob signed
20    it?
21                MR. FALANGA:  Object to the form.
22         A.     It was blank when I gave it to her.
23         Q.     So for sure it was after that that
24    Rob signed it?
25         A.     Yes.
```

# EXHIBIT #96

Page 230

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO. 07-15195(MS)
CHAPTER 11

In re BAYONNE MEDICAL CENTER,        :

        Debtor,        :

BAYONNE MEDICAL CENTER,        :
Debtor and
Debtor-in-Possession; and        :
ALLEN D. WILEN, in his                    DEPOSITION OF:
capacity as Liquidating        :
Trustee and Estate                        CAROLINE EVANS
Representative for the Estate  :
of Debtor, Bayonne Medical                VOLUME II
Center,                        :          (Pages 230-412)

        Plaintiff,        :

        -vs-        :

BAYONNE/OMNI DEVELOPMENT,        :
L.L.C., a New Jersey limited
liability company; et al.,        :

        Defendants.        :
_____

B E F O R E:

    SHARON B. STOPPIELLO, a Certified Court Reporter and Notary Public of the State of New Jersey, at the offices of CONNELL FOLEY, L.L.P., 85 Livingston Avenue, Roseland, New Jersey, on TUESDAY, JUNE 1, 2010, commencing at 9:27 a.m., pursuant to Notice.

DepoLink
Court Reporting & Litigation Support Services
Phone (973) 353-9880    Fax (973) 353-9445
www.depolinklegal.com

```
 1      Q.     Why did you write it?
 2      A.     I don't know the answer to that.
 3      Q.     Why were you trying to make Mr.
 4  Eisenreich feel "secure" regarding "my CBO money"?
 5      A.     We were asking him for $1,000,000.
 6  I'm assuming it was referring to that.
 7      Q.     Did Mr. Eisenreich convey to you that
 8  he needed to be secure regarding the loan?
 9      A.     Not specifically that way, no.
10      Q.     And then he replies on Wednesday,
11  "Are you able to talk at around 4:00 or later?
12  Thanks."  Do you recall getting that e-mail?
13      A.     Not that specific e-mail, no.
14      Q.     Do you recall talking to him in or
15  about the first week of June regarding the CBO
16  money?
17      A.     You know what?  This specific
18  conversation I do not recall (indicating).
19      Q.     Who is negotiating the loan from Mr.
20  Eisenreich on behalf of the hospital?
21      A.     I mean, I think it was more than one
22  person.  I mean I talked to him, Paul talked to him.
23  I'm allowed to say that we asked for help from our
24  attorneys, right?
25      Q.     Yes.
```

Case 09-01689-MS    Doc 47-17    Filed 05/06/11    Entered 05/06/11 10:01:44    Desc
Exhibit #93 - #96    Page 20 of 20

```
1      A.    We involved D.B. and Rob Burney
2  sometimes.
3      Q.    But in terms of employees at the
4  hospital, it was either you or Mr. Mohrle?
5      A.    I would say yes.  I think Marvin had
6  a conversation with him once or twice, but I'm not
7  sure what that was about during the same period of
8  time.
9      Q.    You're not sure if it was about the
10 loan, correct?
11     A.    Correct.
12     Q.    Are you positive that Mr. Mohrle had
13 communications --
14     A.    Yes.
15     Q.    -- with Mr. Eisenreich regarding the
16 loan?
17     A.    Yes, I am.
18     Q.    Why are you positive of that fact?
19     A.    More than one of them took place
20 hands free in his office.
21     Q.    So on a conference call?
22     A.    Uh-huh.
23     Q.    How long did the negotiation of the
24 loan last in terms of days?  Did it go on for weeks?
25     A.    I don't know.
```